OPINION
On November 3, 1998, the Hancock County Grand Jury issued a nine-count indictment against appellant, Adam J. Jacobs. Counts one through three were for Aggravated Robbery, violations of R.C. 2911.01(A)(1), counts four through six were for Kidnapping, violations of R.C. 2905.01(A)(2), and counts seven through nine were for Felonious Assault, violations of R.C. 2903.11(A)(2). Each count contained a firearm specification pursuant to R.C. 2941.145.
The record indicates that on October 9, 1998, appellant drove from Lima to Findlay with three companions. Appellant testified that it was his idea to travel to Findlay to purchase marijuana from a friend, Rudy Ochoa, and that he was responsible for providing directions to his friend's house. Appellant further testified that he was the person who made numerous telephone calls in an effort to discern the exact location of Mr. Ochoa's residence after the foursome arrived in Findlay and encountered trouble in finding the house. Appellant testified that when the foursome located the residence, appellant initially went into the house alone and engaged the occupants in conversation.
Appellant further testified that the three companions entered the house a short time later and one companion, Anthony Addison, produced a handgun and ordered the three occupants of the house to lie face down on the floor. One victim, Steve Morris, was struck in the face with a telephone receiver and Addison fired one round into the floor in the vicinity of Morris. The three victims were then bound and blindfolded with duct tape and their pockets were searched. Jeremy Quiroga, an occupant of the house, had the handgun placed against his head and then his pants were pulled down and the handgun was placed against his penis while he was threatened by Addison to surrender all of his money. Various items, including clothing, credit cards, and cash were then taken from the residence.
Appellant further testified that following the incident he and his three companions got back into the car and drove towards Lima. Upon being apprehended by the police, appellant admittedly lied about his knowledge of the incident and the location of the handgun.
On December 28, 1998, appellant's case was consolidated with that of co-defendant Yul Lee. On January 20, 1999, appellant was convicted of the three counts of Aggravated Robbery and the three counts of Kidnapping. The jury also returned verdicts of guilty as to firearm specifications for each count. It is from these convictions that appellant now appeals, assigning seven assignments of error.
 First Assignment of Error
The trial court committed prejudicial error by not entering a judgment of acquittal at the end of the state's case and at the end of all of the evidence where there was no (sic) sufficient evidence to establish the defendant, Adam Jacobs, aided and abetted the offense and allowing the jury to speculate and make conjecture as to the defendant's guilt.
The standard for determining when a Crim.R. 29 motion for acquittal is properly granted was enunciated in the syllabus of State v. Bridgeman (1978), 55 Ohio St.2d 261, 381 N.E.2d 184, where the court stated:
 Pursuant to Crim.R. 29(A), a court shall not order an entry of judgment of acquittal if the evidence is such that reasonable minds can reach different conclusions as to whether each material element of a crime has been proved beyond a reasonable doubt.
"A motion for judgment of acquittal under Crim.R. 29(A) should be granted only where reasonable minds could not fail to find reasonable doubt." State v. Apanovitch (1987), 33 Ohio St.3d 19,23, 514 N.E.2d 394, 399. A verdict will not be disturbed unless the appellate court finds that reasonable minds could not reach the conclusion reached by the trier of fact. Jackson v. Virginia (1979), 443 U.S. 307, 99 S.Ct. 2781, 61 L.Ed.2d 560.
We are mindful that the jury heard all of the evidence, was instructed as to the law, and as a result found appellant guilty beyond a reasonable doubt. Our inquiry does not involve how this Court might interpret the evidence but, rather, after viewing the evidence in a light most favorable to the prosecution, whether any reasonable trier of fact could have found essential elements of the crime proven beyond a reasonable doubt. State v. Barnd (1993), 85 Ohio App.3d 254, 262, 619 N.E.2d 518, 522-523, citing State v. Wolfe (1988), 51 Ohio App.3d 215, 216, 555 N.E.2d 689,690-691; See also Jackson, 443 U.S. at 319, 99 S.Ct. at 2789,61 L.Ed.2d at 573-74; State v. Jenks (1991), 61 Ohio St.3d 259,574 N.E.2d 492.
Appellant argues there is insufficient evidence that he aided and abetted in the commission of the Aggravated Robberies and the Kidnappings. More particularly, appellant asserts he was merely an observer of and not a participant in the crimes for which he was convicted. We hold there was sufficient evidence to overcome the motions for acquittal.
R.C. 2923.03(A)(2) provides:
 No person acting with the kind of culpability required for the commission of an offense, shall do any of the following: Aid or abet another in committing the offense;
The court, in State v. Sims (1983), 10 Ohio App.3d 56, 58,460 N.E.2d 672, 675, defined aid as "to assist" and abet as "to incite or encourage." Consequently, the mere presence of the accused during the commission of a crime does not make him an accomplice. State v. Widner (1982), 69 Ohio St.2d 267, 269, 431 N.E.2d 1025,1027. To prove aiding and abetting, however, direct and circumstantial evidence may be introduced. State v. Cartellone (1981), 3 Ohio App.3d 145, 150, 444 N.E.2d 68, 74. Therefore, a common purpose among two or more persons to commit a crime may be inferred from presence, conduct, and companionship before, during, and after the offense. State v. Pruett (1971), 28 Ohio St.2d 29,274 N.E.2d 755. In other words, there must be proof that the defendant has, in some way, participated in, or been a part of, the acts committed. Columbus v. Russell (1973), 39 Ohio App.2d 139,140, 316 N.E.2d 897, 898.
At the close of the State's case-in-chief, appellant moved for dismissal of the charges pursuant to Crim.R. 29. A thorough analysis of the record reveals the following evidence had been presented by the close of the State's case-in-chief: appellant was the only person who knew the directions to the foursome's ultimate destination; he was the only one of the foursome who personally knew the victims; upon arrival at the residence, he entered the house alone; he participated in a conversation with the victims concerning the presence of drugs or guns in the house; he, along with his three companions, walked around various rooms in the house; after the victims were bound, Addison and Wall remained in the living room with the victims and the victims heard ransacking in two other rooms simultaneously; when the vehicle was pulled over, credit cards identified as belonging to one of the victims were found in the seat where appellant was seated when the car was ultimately stopped; appellant lied to an investigating officer about his name; and, appellant lied to the same investigating officer about the whereabouts of the gun used in the robberies. Based upon the evidence discussed above, as well as a review of the complete record at the close of the State's case-in-chief, this court holds that the evidence was such that reasonable minds could reach different conclusions as to whether or not each material element of the crimes had been proved beyond a reasonable doubt.
Appellant made a second motion for dismissal pursuant to Crim.R. 29 at the close of all the evidence. A thorough analysis of the complete record reveals that, in addition to the evidence discussed supra, appellant testified on his own behalf during his case-in-chief. His testimony consisted, inter alia, of the following: he suggested going to his "friend" Rudy Ochoa's house to purchase marijuana; he provided directions to his companions in order to arrive at the victims' house; he rode in the automobile with his companions to Findlay; he made several telephone calls while in Findlay in an effort to obtain exact directions to the victims' house; when the foursome arrived at the victims' residence, he initially went into the house alone and engaged the occupants in conversation; following the robberies and kidnappings, he got back into the same automobile with his three companions to return to Lima; and, when the automobile was pulled over by the Highway Patrol, he admittedly lied to the police about what had occurred or where the gun was located.
The record further indicates that the State offered rebuttal evidence to the effect that during the course of an interview with Sergeant Davis, appellant stated that after the victims were bound, "everybody looked through stuff, did their own thing." Such a statement suggests appellant admittedly participated in ransacking the residence. Although appellant refuted this statement at trial, the weight to be given evidence and credibility of the witnesses are primarily decisions for the jury. State v. DeHass (1967), 10 Ohio St.2d 230, 227 N.E.2d 212. Based upon the evidence discussed above, as well as a review of the complete record, this court holds that the evidence was such that reasonable minds could reach different conclusions as to whether or not each material element of the crimes had been proved beyond a reasonable doubt.
Finding no error prejudicial to appellant concerning his respective Crim.R. 29 motions, the first assignment of error is overruled.
 Second Assignment of Error The trial court committed prejudicial error in its charge to the jury on the issue of aider and abettor by failing to give the instructions as requested by the defendant.
 Third Assignment of Error The trial court committed prejudicial error in its failure to give the instruction requested on the issue of culpability under the provisions of Ohio Revised Code, Section 2901.21.
As appellant's second and third assignments of error concern similar jury instructions, they will be addressed jointly.
A reviewing court must consider the effect of any alleged erroneous jury instruction in the context of the overall charge rather than in isolation. Cupp v. Naughten (1973), 414 U.S. 141,146-147, 94 S.Ct. 396, 400-401, 38 L.Ed.2d 368, 373-374; State v. Price (1979), 60 Ohio St.2d 136, 398 N.E.2d 772. This rule is applicable to the present case where appellant claims the trial court erred in failing to give proposed jury instructions concerning aiding and abetting and culpability.
With respect to aiding and abetting, the trial court delivered extensive instructions to the jury. Included in those instructions was the following:
 Now before you find a Defendant guilty of complicity in the commission of an offense, you must find beyond a reasonable doubt that a Defendant must have taken a role in causing the commission of an offense. That he advised, hired, incited, commanded, or counseled the principal to do the act. In the absence of a conspiracy or some preceding connection with the transaction, one does not aid or abet if he merely sees a crime being committed. Mere association with the principal is not enough.
 Consequently, an accused's presence alone at the crime scene is insufficient to establish aiding and abetting. To prove aiding and abetting, however, direct and circumstantial evidence may be introduced. Therefore, participation in criminal intent may be inferred from presence, companionship, and conduct before and after the offense is committed. In other words, there must be proof that Defendant, Adam J. Jacobs, * * * had in some way participated in, or been a part of the act committed.
Appellant asserts the above instructions are erroneous. Instead, appellant argues the following instructions should have been given.
 In the absence of the conspiracy or some proceeding connected with the transaction, he does not aid and abet if he merely sees a crime being committed and mere approval or acquiescence without express concurrence with a doing of something to contribute to an unlawful act is not aiding and abetting the act.
A trial court has discretion to determine and use its own language when incorporating legal principles in jury instructions. Parma Hts. v. Jaros (1990), 69 Ohio App.3d 623, 630,591 N.E.2d 726, 730. Also, a trial court may properly refuse to give a requested special instruction where the propositions of the requested instruction are fully and fairly covered by the court in its general charge. State v. Barnd (1993), 85 Ohio App.3d 254,259, 619 N.E.2d 518, 520, citing Rice v. Cleveland (1944),144 Ohio St. 299, 304, 58 N.E.2d 768, 771. The instructions given by the trial court concerning aiding and abetting sufficiently covered the issue.
Although not identical to those requested by Appellant, the instructions given clearly explained the legal principle involved. Any difference in the language utilized by the trial court constitutes a distinction without significance. When considered in the context of the overall charge, the jury instructions concerning aiding and abetting were correct.
With respect to the required state of culpability, the jury was instructed as follows:
 * * * The kind of culpability acquired (sic) for aggravated robbery and felonious assault is that the offender acted knowingly. The kind of culpability required for kidnapping is purposely. Both purposely and knowingly will be defined for you in my instruction as they relate to the specific crimes of aggravated robbery, kidnapping, and felonious assault.
The trial court correctly defined "knowingly" and "purposely" later in its charge.
The trial court instructed the jury regarding the requisite degree of culpability required for the offenses charged, albeit not using the exact language of R.C. 2901.21(A) as requested by appellant. Again, any difference in language utilized by the trial court amounts to a distinction without significance. As noted by the trial court, appellee, and appellant, we have held that when the trial court properly and adequately instructs the jury on the requisite state of culpability, there is no prejudice by the court's refusal to duplicate the instruction with the wording of R.C. 2901.21(A). Barnd, 85 Ohio App.3d at 259,58 N.E.2d at 520. When considered in the context of the overall charge, the jury instructions concerning culpability were correct.
Having found no error prejudicial to appellant in the instructions given, the second and third assignments of error are overruled.
 Fourth Assignment of Error The trial court committed error prejudicial to the defendant by failing to give a charge to the jury of the defense of duress where the facts establish that the defendant committed overt acts of participation in a crime but does not act to stop the crime and is accused of aiding and abetting only by his actions to protect himself.
After the completion of arguments, a trial court must fully and completely give the jury all instructions which are relevant and necessary for the jury to weigh the evidence and discharge its duty as the fact-finder. State v. Comen (1990), 50 Ohio St.3d 206,553 N.E.2d 640, paragraph two of the syllabus. In criminal cases, special jury instructions requested by a party must be included, at least in substance, in the trial court's general charge if they are correct, pertinent and timely presented. State v. Guster (1981), 66 Ohio St.2d 266, 269, 421 N.E.2d 157, 160. Conversely, if the general instructions fully and fairly cover the substance of the special instruction, a trial court properly refuses to give the requested special instruction. Barnd (1993),85 Ohio App.3d 254, 259, 619 N.E.2d 518, 520, citing Rice v. Cleveland (1944), 144 Ohio St. 299, 304, 58 N.E.2d 768, 771. An instruction is also properly refused if it does not apply to the facts of the governing case. State v. Scott (1986), 26 Ohio St.3d 92,101, 497 N.E.2d 055, 63.
Ohio courts have long recognized that:
 Jury instructions are to be tailored to the facts of each case. Patterned instructions are designed to aid the court in preparation of the charge to the jury. Obviously, only those instructions which are applicable to the facts of the case should be given. The trial judge must select and modify instructions to fit the particular facts of each case.
Avon Lake v. Anderson (1983), 10 Ohio App.3d 297, 299,462 N.E.2d 188, 190. The trial judge is vested with the responsibility of making an initial determination of whether there is evidence sufficient to warrant a particular instruction. This court will not reverse the decision of the trial judge relating to whether sufficient facts existed to support a jury instruction absent an abuse of discretion. See Barnd (1993), 85 Ohio App.3d 254,259, 619 N.E.2d 518, 520. Further, a court's failure to give a requested pertinent instruction may be deemed harmless error when the evidence clearly supports a guilty verdict beyond a reasonable doubt. State v. Mitchell (1989), 60 Ohio App.3d 106,574 N.E.2d 573, 577.
Pursuant to Crim.R. 30, Jacobs timely filed a written request for a jury instruction concerning the defense of duress. The court refused to instruct the jury on the issue of duress citing the following reasons:
 The Court finds that the status of the evidence is of such that the Defendant's theory of the case, if believed by the jury, is that he had absolutely nothing to do with this particular set of nine charges. Accordingly the — in this court's opinion, any instruction on duress would be inappropriate.
 In addition, the Court does not feel that if we take the alternative defense theory that something happened and he was under duress, Court doesn't feel that the Defendant's evidence is of such a nature that the Defendant had no reasonable opportunity to escape. So with that, the Court's going to refuse to instruct on duress.
The law does not require a trial court to charge a jury on defenses that are necessarily and inherently mutually exclusive. Nor is a trial court required to instruct on a defense that is unsupported by the evidence. This court will not reverse the decision of the trial judge relating to whether sufficient facts existed to support a jury instruction absent an abuse of discretion, and, after a thorough analysis of the record, we cannot say the trial court abused its discretion in denying the requested instruction. Accordingly, appellant's fourth assignment of error is overruled.
 Fifth Assignment of Error The trial court committed prejudicial error by not granting this defendant a new trial when after trial and before sentencing it was discovered that a co-defendant tried jointly with this defendant was not the same person named in the indictment, and such fact was unknown to the defendant.
Motions for a new trial made pursuant to Crim.R. 33(B) are addressed to the sound discretion of the trial court, State v. Williams (1975), 43 Ohio St.2d 88, 330 N.E.2d 891, and will not be disturbed on appeal absent an abuse of discretion. State, ex rel. Crosby v. Ohio Dept. of Mental Retardation and Development Disabilities (1988), 38 Ohio St.3d 179, 527 N.E.2d 812; State v. Schiebel (1990), 55 Ohio St.3d 71, 564 N.E.2d 54, paragraph one of the syllabus; State v. Tijerina (1994), 99 Ohio App.3d 7, 11,649 N.E.2d 1256, 1258. An abuse of discretion connotes more than an error of law or judgment; it implies the court's attitude is unreasonable, arbitrary, or unconscionable. State v. Xie (1992),62 Ohio St.3d 521, 526, 584 N.E.2d 715.
With these standards in mind, we turn to appellant's contention that the trial court abused its discretion by denying appellant's request for a new trial. Based on our consideration of the entire record, we conclude that the trial court did not abuse its discretion by denying appellant's motion for a new trial. The identity of the co-defendant does not change appellant's conduct or involvement in the crimes committed where appellant himself has testified at length about the extent of his own involvement in the incident. Assuming arguendo that appellant's lack of knowledge that the co-defendant was using an alias is relevant to the case, we cannot say appellant was precluded from obtaining a fair trial because such information was not available to him at the commencement of his defense. The trial court's denial of appellant's motion for a new trial was therefore not unreasonable, arbitrary or unconscionable. Appellant's fifth assignment of error is accordingly overruled.
 Sixth Assignment of Error The court committed prejudicial error in not finding that the charges of kidnapping and robbery merged and proceeded to sentence the defendant for both robbery and kidnapping.
The allied offense statute, R.C. 2941.25, prohibits multiple convictions:
 (A) Where the same conduct by the defendant can be construed to constitute two or more allied offenses of similar import, the indictment or information may contain counts for all such offenses, but the defendant may be convicted of only one.
 (B) Where the defendant's conduct constitutes two or more offenses of dissimilar import, or where his conduct results in two or more offenses of the same or similar kind committed separately or with a separate animus as to each, the indictment or information may contain counts for all such offenses, and the defendant may be convicted of all of them.
In order to determine whether a defendant has been charged with allied offenses of similar import, we look to the two-part test set forth in State v. Blankenship (1988), 38 Ohio St.3d 116, 117,526 N.E.2d 816, 817, in which the Supreme Court held:
 In the first step, the elements of the two crimes are compared. If the elements of the offenses correspond to such a degree that the commission of one crime will result in the commission of the other, the crimes are allied offenses of similar import and the court must then proceed to the second step. In the second step, the defendant's conduct is reviewed to determine whether the defendant can be convicted of both offenses. If the court finds either that the crimes were committed separately or that there was a separate animus for each crime, the defendant may be convicted of both offenses.
If the first step is not met, then the second step need not be considered. However, in the event a court concludes that the elements correspond, the court then examines whether the crimes were committed with separate conduct or a separate animus. If the court finds that the crimes were committed with separate animus, the defendant can be convicted of both offenses. Only if the same conduct supports both offenses or if the court finds that the defendant had a single animus for both offenses, are the offenses found to be allied offenses of similar import.
To determine whether the defendant had a separate animus for both offenses when one of those offenses is Kidnapping, the court must apply the test set forth in State v. Logan (1979), 60 Ohio St.2d 126,397 N.E.2d 1345, syllabus, to determine: (a) whether the "restraint or movement of the victim is merely incidental to a separate underlying crime" indicating a single animus for both offenses; and (b) whether the movement or "restraint of the victim subjects the victim to a substantial increase in risk of harm separate and apart from that involved in the underlying crime, there exists a separate animus as to each efense sufficient to support separate convictions."
Pursuant to the test set forth by the Supreme Court of Ohio in Blankenship, we must first abstractly compare the elements of the two offenses. See State v. Rance (1999), 85 Ohio St.3d 632,637, 710 N.E.2d 699. In the case sub judice, appellant was indicted and convicted on three counts of Aggravated Robbery, in violation of R.C. 2910.01, and on three counts of Kidnapping, in violation of R.C. 2905.01. Aggravated Robbery is defined in relevant part as:
 (A) No person, in attempting or committing a theft offense, as defined in section 2913.01 of the Revised Code, or in fleeing immediately after the attempt or offense, shall do any of the following:
 (1) Have a deadly weapon on or about the offender's person or under the offender's control and either display the weapon, brandish it, indicate that the offender possesses it, or use it;
* * *
Kidnapping is defined in relevant part as:
 (A) No person, by force, threat, or deception, * * * shall remove another from the place where the other person is found or restrain the liberty of the other person, for any of the following purposes:
* * *
 (2) To facilitate the commission of any felony or flight thereafter;
* * *
This court has had occasion to compare the elements of Aggravated Robbery and Kidnapping. See State v. Parker (1991),72 Ohio App.3d 456, 594 N.E.2d 1033; State v. Dunn (Nov. 20, 1991), Marion App. No. 9-89-27, unreported; State v. West (April 13, 1995), Union App. No. 14-94-37, unreported; State v. Allen (March 1, 1988), Allen App. No. 1-86-11, unreported. A review of our previous opinions indicates Aggravated Robbery and Kidnapping are not necessarily allied offenses of similar import. Aggravated Robbery requires a deadly weapon to be on or about the person, or under the control of the accused. Additionally, there is no element of force, threat or deception in this crime. Kidnapping, on the other hand, does not require the presence of a deadly weapon, but it does require force, threat or deception.
Further, the conduct which creates the culpability for Kidnapping under R.C. 2905.01(A)(2) must be for the purpose of facilitating the commission of a felony. However, the conduct, which is proscribed by R.C. 2911.01(A) (1), includes the theft offenses listed in R.C. 2913.01, many of which are misdemeanors. Thus, as we concluded in our previous opinions, an analysis of the elements of these crimes, as charged, indicates they are not allied offenses of similar import because we do not find sufficient similarity between the elements of the two crimes; the crimes do not correspond to such a degree that commission of one offense constitutes commission of another. Accordingly, appellant's sixth assignment of error is overruled.
We note that both appellant and appellee rely upon State v. Logan (1979), 60 Ohio St.2d 126, 397 N.E.2d 1345, and its progeny for the proposition that inherent in every Robbery is the restraint necessary to accomplish the Robbery; such resultant restraint constituting Kidnapping so long as the restraint is incidental to the separate underlying crime of Robbery. Although we agree with the proposition, we do not believe it to be applicable to our analysis.
In making the observations concerning the interplay between Robbery and Kidnapping, the Logan Court was not comparing the elements of the two crimes. Rather, the Court endeavored to " establish reasonable criteria for the determination of what might constitute separate animus, within the meaning of R.C. 2941.25(B), when a defendant has been charged with multiple offenses including kidnapping." The Court stated: "Where an individual's immediate motive involves the commission of one offense, but in the course of committing that crime he must, a priori, commit another, then he may well possess but a single animus " Logan,60 Ohio St.2d at 131, 397 N.E.2d at 1349. As an example of such a situation, the Court cited Robbery and Kidnapping.
The proposition upon which appellant and appellee both rely is clearly applicable when a court reaches the issue of separate animus, the second step in the analysis, however, we believe the proposition is not dispositive when engaging in the comparison of the elements of the crimes charged, the first step in the analysis. In other words, had we concluded the crimes of Aggravated Robbery and Kidnapping were allied offenses of similar import, we would have then considered the instruction of the Logan Court regarding the nature of the restraint intrinsic in the crime of Robbery. Because we have not reached that conclusion in this case, such consideration is not necessary.
 Seventh Assignment of Error The verdict finding Adam Jacobs guilty of three counts of aggravated robbery and three counts of kidnapping is against the manifest weight of the evidence.
When considering a manifest weight of the evidence claim, we examine the entire record, weigh the evidence and then, making all reasonable inferences, consider the credibility of witnesses and determine whether in resolving conflicts in the evidence, the jury lost its way and created such a manifest miscarriage of justice that the conviction must be reversed and a new trial ordered. State v. Martin (1983), 20 Ohio App.3d 172, 175, 485 N.E.2d 717,720; see Tibbs v. Florida (1982), 457 U.S. 31, 102 S.Ct. 2211,72 L.Ed.2d 652. It is well established in Ohio law that an appellate court will not reverse a conviction where there is substantial evidence upon which the trier of fact could reasonably conclude that all of the elements of an offense have been proven beyond a reasonable doubt. State v. Eley (1978), 56 Ohio St.2d 169,383 N.E.2d 132; State v. Jenks (1991), 61 Ohio St.3d 259,574 N.E.2d 492. The discretionary power to grant a new hearing should be exercised only in the exceptional case in which the evidence weighs heavily against the judgment. State v. Thompkins (1997),78 Ohio St.3d 380, 387, 678 N.E.2d 541, 547, citing State v. Martin (1983), 20 Ohio App.3d 172, 175, 485 N.E.2d 717. Because the trier of fact is in a better position to observe the witnesses' demeanor and weigh their credibility, the weight of the evidence and the credibility of the witnesses are primarily for the trier of fact. State v. DeHass (1967), 10 Ohio St.2d 230,227 N.E.2d 212, syllabus.
With these standards in mind, a careful reading of the record herein indicates the existence of substantial evidence before the jury from which to conclude beyond a reasonable doubt that the crimes for which appellant was indicted occurred, that appellant was involved, and that while the crimes were being committed, a deadly weapon was present and possessed or in the control of appellant or one of his accomplices. In light of the substantial evidence present, we cannot say the jury lost its way and created a manifest miscarriage of justice sufficient to warrant the exceptional measure of reversing the decision of the jury and ordering a new trial. Accordingly, appellant's seventh assignment of error is overruled.
Finding no error prejudicial to appellant, in the particulars assigned and argued, we affirm the judgment of the trial court.
Judgment affirmed.
HADLEY and WALTERS, JJ., concur.