The STATE of Ohio, Appellee,

v.

PARKER, Appellant.

[Cite as *State v. Parker* (1991), 72 Ohio App.3d 456.]

Court of Appeals of Ohio,
Marion County.

No. 9–89–14.

Decided Feb. 8, 1991.

458

*Jim P. Slagle*, Prosecuting Attorney, for appellee.
*Thomas A. Mathews*, for appellant.

Shaw, Presiding Judge.

Appellant, Charles D. Parker, appeals from a judgment of conviction and sentence entered in the Court of Common Pleas of Marion County.

The record reflects that, in December 1988, the Marion County Grand Jury returned a thirty-five count joint indictment against three individuals, Gary Cecil Dunn, Larry Lynn Dunn and the appellant in the case *sub judice*, Charles D. Parker. The indictment charged defendants with multiple counts of aggravated robbery, aggravated burglary, felonious assault and kidnapping, resulting from a series of events which occurred on December 7, 1988 and December 15, 1988.

As pertinent to the instant appeal, the charges were as follows: Counts 4 and 5 charged appellant and Gary Dunn with the aggravated burglary and aggravated robbery of the residence of Cal and Sylvester Murphy; Counts 6 through 12 charged appellant and Gary Dunn with aggravated burglary, aggravated robbery, three counts of kidnapping and two counts of felonious assault as the result of events that transpired at the residence of Harold and Kathy Waterhouse; Count 13 charged appellant and Gary Dunn with the aggravated robbery of the Oakland Bar; Counts 14 through 24 charged appellant and Gary Dunn with aggravated robbery, five counts of kidnapping and five counts of felonious assault as the result of the robbery of Bobbie's Bar; Counts 25 through 33 charged appellant, Gary Dunn and Larry Lynn Dunn with two counts of aggravated burglary, two counts of aggravated robbery, three counts of kidnapping and two counts of felonious assault resulting from events that transpired at the duplex residence of Chris and Amy Crawford and Eugene Jay Horner; and Count 35 charged appellant with receiving stolen property.

Counts 4 through 33 of the indictment contained firearm specifications pursuant to R.C. 2941.141. In addition, each count of the indictment pertaining to appellant contained a specification, pursuant to R.C. 2941.142, that he had previously been convicted of an aggravated felony.

Prior to trial, Counts 4, 5 and 35 were dismissed as to appellant. The case was tried before a jury in a joint trial of the three defendants. Appellant was found guilty of three counts of aggravated robbery, five counts of aggravated burglary, eight counts of kidnapping, nine counts of felonious assault and the firearm specifications. However, the state subsequently dismissed three of the kidnapping charges.

The trial court sentenced appellant to indeterminate sentences of fifteen to twenty-five years on each count of aggravated burglary, aggravated robbery and kidnapping. The trial court sentenced appellant to an indeterminate sentence of twelve to fifteen years on each count of felonious assault. In addition, pursuant to R.C. 2929.71, the court sentenced appellant to five consecutive three-year terms of actual incarceration for the firearm specifica-

tions. Appellant assigns ten errors to the judgment of conviction and sentence.

In his first assignment of error, appellant contends that the trial court erred in denying his motion to sever the defendants for trial.

■ Crim.R. 14 provides for relief from prejudice which results from joinder of offenses or defendants for trial. However, a defendant claiming error in the trial court's refusal to sever offenses or defendants has the burden of affirmatively showing that his rights were prejudiced by the joinder. *State v. Torres* (1981), 66 Ohio St.2d 340, 20 O.O.3d 313, 421 N.E.2d 1288.

■ Appellant alleges that the joinder of defendants at trial was prejudicial to him for three reasons. First, appellant contends that the verdicts of guilty in his case were the product of the jury's determination of appellant's "guilt by association" with codefendant Gary Dunn. However, upon review of the record, we conclude that the evidence relative to each defendant was direct and uncomplicated, so that the jury was capable of segregating the proof as to each defendant. See *State v. Brooks* (1989), 44 Ohio St.3d 185, 542 N.E.2d 636.

■ Appellant further contends that he was prejudiced because the presence of his codefendants left him undecided as to whether or not he should testify. However, the Supreme Court of Ohio has held that:

" * * * The mere possibility that the defendant might have a better choice of trial tactics if the counts are separated, or the mere possibility that he might desire to testify on one count and not on the other, is insubstantial and speculative; it is not sufficient to show prejudice. * * * " *Torres, supra,* 66 Ohio St.2d at 344, 20 O.O.3d at 315, 421 N.E.2d at 1291.

Likewise, we find that appellant's mere allegation that he would possibly have testified, but for the presence of his codefendants, does not meet the burden of affirmatively demonstrating prejudice caused by joinder. "The record does not demonstrate that appellant was foreclosed from any line of defense by the joinder * * *." *State v. Long* (1984), 20 Ohio App.3d 377, 378, 20 OBR 483, 484, 486 N.E.2d 835, 836.

■ Finally, appellant argues that joinder was prejudicial because the statement of codefendant Larry Lynn Dunn was admitted into evidence, thus denying appellant the right to cross-examine a witness against him. The reference here is to the testimony of Douglas Schiefer, Larry Dunn's parole officer, that Larry Dunn told Schiefer that, during the early morning hours of December 15, 1988, Dunn was at 662 Sugar Street.

Although it is not immediately apparent what the prejudicial effect of this statement was to appellant (in fact, appellant offers no explanation of his allegations of prejudice in his brief before this court), the record nonetheless reflects that defense counsel for appellant was given the full opportunity to cross-examine Schiefer, subject only to the exception that Schiefer's relationship as a parole officer to Larry Dunn not be disclosed in the presence of the jury.

Furthermore, upon reviewing the record in this matter, we do not find that the statement made by Larry Dunn was inculpatory as to appellant. See *State v. Moritz* (1980), 63 Ohio St.2d 150, 17 O.O.3d 92, 407 N.E.2d 1268. Moreover, the trial court gave an appropriate limiting instruction to the jury that Schiefer's testimony was to be considered only in Larry Dunn's case. Thus, we do not find that appellant was denied the right to confrontation of a witness. Accordingly, the first assignment of error is overruled.

In his second assignment of error, appellant contends that he was denied the right to confront a witness against him. Here again, the reference is to the testimony of Douglas Schiefer regarding statements by Larry Dunn as to his whereabouts on the morning of December 15, 1988. In support of his argument, appellant cites paragraph one of the syllabus of *State v. Moritz, supra:*

"1. An accused's right of cross-examination secured by the confrontation clause of the Sixth Amendment is violated in a joint trial with a non-testifying codefendant by the admission of extrajudicial statements made by the codefendant inculpating the accused."

Based upon our determination, under the preceding assignment of error, that the statement in question was not inculpatory as to appellant, the second assignment of error is overruled.

In his third assignment of error, appellant contends that, in this case, kidnapping, as defined in R.C. 2905.01(A)(2), and aggravated robbery, as defined in R.C. 2911.01(A)(1), were allied offenses of similar import within the contemplation of R.C. 2941.25. Appellant argues that the two kidnapping convictions relevant to the Waterhouse residence, the four kidnapping convictions relevant to Bobbie's Bar and the two kidnapping convictions relevant to the Horner/Crawford residence were committed incidentally to robbery. Thus, appellant argues, the trial court erred in sentencing him for both offenses.

R.C. 2941.25 provides that:

"(A) Where the same conduct by defendant can be construed to constitute two or more allied offenses of similar import, the indictment or information

may contain counts for all such offenses, but the defendant may be convicted of only one.

"(B) Where the defendant's conduct constitutes two or more offenses of dissimilar import, or where his conduct results in two or more offenses of the same or similar kind committed separately or with a separate animus as to each, the indictment or information may contain counts for all such offenses, and the defendant may be convicted of all of them."

In *State v. Moss* (1982), 69 Ohio St.2d 515, 519, 23 O.O.3d 447, 450, 433 N.E.2d 181, 185, the Supreme Court of Ohio held that R.C. 2941.25 " * * * has authorized trial courts, in a single criminal proceeding, to convict and to sentence a defendant for two or more offenses, having as their genesis the same criminal conduct or transaction, provided that the offenses (1) were not allied and of similar import, (2) were committed separately or (3) were committed with a separate animus as to each offense."

In determining whether the appellant's convictions for both aggravated robbery and kidnapping violate R.C. 2941.25, we are guided by principles set forth in *State v. Donald* (1979), 57 Ohio St.2d 73, 11 O.O.3d 242, 386 N.E.2d 1341, and *State v. Logan* (1979), 60 Ohio St.2d 126, 14 O.O.3d 373, 397 N.E.2d 1345, wherein the Supreme Court of Ohio recognized that " * * * in order for two crimes to constitute allied offenses of similar import, * * * [t]he offenses and their elements must correspond to such a degree that commission of the one offense will result in commission of the other." *Id.* at 128, 14 O.O.3d at 374, 397 N.E.2d at 1348.

The elements of aggravated robbery, as charged in the instant case under R.C. 2911.01(A)(1), are:

(1) Having a deadly weapon or dangerous ordnance

(2) While attempting or committing a theft offense.

The elements of kidnapping, as charged in the instant case, under R.C. 2905.01(A)(2) are:

(1) Removal of another from the place where he is found or restraining him of his liberty

(2) By force, threat or deception

(3) For the purpose of facilitating the commission of any felony or flight thereafter.

Having reviewed these elements, we are of the opinion that the crimes of aggravated robbery and kidnapping, as indicted in this case, are not allied offenses of similar import. An accused cannot be convicted of kidnapping under R.C. 2905.01(A)(2) without having used force, threat or deception.

However, " * * * an accused can be convicted of aggravated robbery under R.C. 2911.01(A)(1) without having used or threatened to use any force, as long as the accused merely possesses a deadly weapon or dangerous ordnance during the commission of a theft." *State v. Merriweather* (1980), 64 Ohio St.2d 57, 59, 18 O.O.3d 259, 261, 413 N.E.2d 790, 791.

Moreover, the conduct which creates the culpability for kidnapping under R.C. 2905.01(A)(2) must be for the purpose of facilitating the commission of a felony. However, the conduct which is proscribed by R.C. 2911.01(A)(1) includes the theft offenses listed in R.C. 2913.01, many of which are misdemeanors. Thus, the crimes do not correspond to such a degree that commission of one offense constitutes commission of another. Accordingly, appellant's third assignment of error is overruled.

■ In his fourth assignment of error, appellant contends that the trial court erred in denying his motion to discharge pursuant to R.C. 2945.71(C)(2).

R.C. 2945.71(C)(2) states that "[a] person against whom a charge of felony is pending * * * [s]hall be brought to trial within two hundred seventy days after his arrest." However, under subsection (E) of the statute, when the accused is held in jail in lieu of bail, each day that the accused is incarcerated is counted as three days. R.C. 2945.72(E) provides that the speedy trial requirement of R.C. 2945.71 may be tolled by "[a]ny period of delay necessitated by reason of a plea in bar or abatement, motion, proceeding * * * made or instituted by the accused."

Appellant was arrested on December 15, 1988. He remained in custody at the Marion County Jail until his trial, which commenced on March 28, 1989. Thus, the trial began one hundred three days subsequent to appellant's arrest. However, the record reflects that on January 17, 1989, appellant filed numerous motions in the trial court, including a motion to suppress evidence seized during a search of his automobile, and a motion to suppress statements made by appellant. These motions were ruled on by the trial court on January 18, 1989 and February 2, 1989.

We believe that the trial court ruled on appellant's motions within a reasonable time. Therefore, the sixteen days that elapsed while the motions were pending are not included for purposes of calculating the speedy trial requirement. See *State v. Bickerstaff* (1984), 10 Ohio St.3d 62, 10 OBR 352, 461 N.E.2d 892. We conclude that appellant was timely brought to trial. The fourth assignment of error is overruled.

■ In his fifth assignment of error, appellant alleges that the verdicts in this case were against the manifest weight of the evidence. We have reviewed the considerable record in this case and conclude that there is

substantial evidence upon which the jury could reasonably have concluded that all the elements of the offenses for which appellant was convicted were proven beyond a reasonable doubt. *State v. Eley* (1978), 56 Ohio St.2d 169, 10 O.O.3d 340, 383 N.E.2d 132, syllabus. Therefore, we will not reverse the verdicts as being against the manifest weight of the evidence. The fifth assignment of error is overruled.

■■ In his sixth assignment of error, appellant contends that the state failed to prove beyond a reasonable doubt the operability of the firearm used in the commission of the offenses. In support of his argument, appellant cites the syllabus of *State v. Gaines* (1989), 46 Ohio St.3d 65, 545 N.E.2d 68:

"R.C. 2923.11(B) and 2929.71(A) require that, prior to imposition of an additional term of three years' actual incarceration for possession of a firearm during the commission of a felony, the state must prove beyond a reasonable doubt that the firearm was operable or could readily have been rendered operable at the time of the offense."

The court further expounded upon the sufficiency of the evidence to establish a firearm specification as follows:

" * * * Admission into evidence of the firearm allegedly employed in the crime is not necessary to establish the specification. Rather, the fact may be established by circumstantial evidence (testimony as to gunshots, smell of gunpowder, bullets or bullet holes, etc.). Nevertheless, there must be some evidence relative to the gun's operability. * * * " *Id.* at 69, 545 N.E.2d at 71–72.

Subsequent to the filing of the appellate briefs in this matter, the Supreme Court of Ohio, in *State v. Murphy* (1990), 49 Ohio St.3d 206, 551 N.E.2d 932, addressed the issue of the type of evidence required to establish a firearm specification, in light of its decision in *Gaines, supra.* The syllabus of *Murphy,* reads as follows:

"The state must present evidence beyond a reasonable doubt that a firearm was operable at the time of the offense before a defendant can receive an enhanced penalty pursuant to R.C. 2929.71(A). However, such proof can be established beyond a reasonable doubt by the testimony of lay witnesses who were in a position to observe the instrument and the circumstances surrounding the crime. *State v. Gaines* [1989], 46 Ohio St.3d 65, [545 N.E.2d 68] modified.)"

The court in *Murphy, supra,* at 208, 551 N.E.2d at 934, found the facts in the case to be as follows:

" * * * [W]e find that the appellant entered the * * * store and announced that it was a holdup. He then took out a T-shirt from inside the front of his

pants. As he unwrapped the shirt, a small gun appeared. He pointed the gun at both the clerk and the customer, waving it back and forth while announcing that if the clerk did not give him the money he would kill him. In addition, both the clerk and the customer described the gun as a one- or two-shot silver or chrome derringer."

Upon these facts ("*i.e.*, the gun being wrapped in a shirt, a description of the instrument from eyewitnesses, and the statement by appellant that he would kill the clerk if he did not give him the money," *id.*), the court concluded that there was sufficient evidence to establish proof beyond a reasonable doubt of the firearm specification.

Turning then to the record before us, we first note that the gun was never recovered or introduced into evidence. However, the victims of the aggravated robbery of the Waterhouse residence testified that the perpetrators possessed a sawed-off shotgun. The gun was pressed against Kathy Waterhouse's back with such force that it left an imprint. In addition, Kathy Waterhouse handled the gun during a struggle with appellant's codefendant, Gary Dunn.

The victims of the aggravated robbery of the Horner/Crawford residence testified that appellant and Gary Dunn possessed a .12 gauge sawed-off shotgun. One of the perpetrators pointed the gun at the victims' heads and threatened to kill them. In addition, Gary Dunn pointed the gun at the stomach of Amy Crawford, who was pregnant at the time, and threatened to kill her baby.

An employee of the Oakland Bar, who was an eyewitness to the aggravated robbery of the bar, testified that the perpetrators had a gun and threatened to kill her if she did not give them the money.

Finally, the individuals who were in Bobbie's Bar, at the time it was robbed, testified that the appellant and Gary Dunn had a .12 gauge sawed-off shotgun with a pistol grip. In addition, the eyewitnesses testified that appellant and his codefendant threatened to kill them if they did not cooperate.

From the totality of the circumstances in this case, and giving due consideration to the standards enunciated in *Gaines* and *Murphy*, we conclude that the evidence was sufficient to establish proof beyond a reasonable doubt that the firearm used in the commission of these offenses was operable. Appellant's sixth assignment of error is overruled.

In his seventh assignment of error, appellant contends that the trial court erred in allowing the state to display charts to the jury without prior authentication and admission into evidence.

■ The trial court allowed the state to display several charts to the jury during the prosecutor's opening statement and closing argument. These displays included one chart comparing the property stolen during each robbery with property recovered by the police and one chart listing similarities between the various crimes. In addition, seven charts were displayed, each of which identified (1) a particular crime situs, (2) the defendant charged with being involved at the situs, (3) the charges in the indictment that resulted from the particular situs, (4) a list of the property stolen, and (5) a list of the evidence to be presented at trial relevant to the particular situs.

In addition, the latter-referenced charts were displayed throughout the trial as well as during the state's opening and closing remarks. However, only the information identifying the crime situs, the particular defendant charged and the offenses charged remained in the jury's view.

Upon review of the record, we find that those charts that were displayed only during opening and closing statements merely assisted the state in explaining its case. The trial court properly instructed the jury that this material was not to be considered as evidence in the case. In addition, the material that was displayed to the jury during the trial mirrored the contents of the indictment in this case. The display of this material was proper to assist the jury in understanding the multicount indictment and to avoid confusion as to the defendants and the charges in the case. Indeed, this purpose was noted by appellant's counsel when he requested, and was granted, the right to submit the indictment to the jury.

Moreover, appellant does not allege, nor do we find any reference in the record, that any witness testified from these charts. Thus, we do not find that the use of these charts was prejudicial to appellant. The seventh assignment of error is overruled.

■ In his eighth assignment of error, appellant contends that the trial court erred in allowing the state to elicit testimony regarding a stereo and equalizer that previously had been suppressed.

The record reflects that law enforcement officers obtained a warrant to search an automobile which was registered to appellant's brother. Among the items recovered during the search were an equalizer and a stereo that were not listed in the search warrant. Subsequently, appellant moved to suppress any and all evidence recovered as a result of the search of the automobile.

Inasmuch as the trial judge assigned to hear this case was also the judge who issued the warrant for the search, the motion to suppress was heard by another common pleas court judge. Upon finding that the officer who executed the warrant had no knowledge at the time of the search that the

stereo and equalizer were stolen, the judge concluded that the seizure of these items was improper and ordered their suppression. However, the judge also ruled that the question of whether testimony regarding the stereo and equalizer could be elicited at trial was premature.

Ultimately, the trial judge assigned to this case ruled that testimony regarding the stereo and equalizer could be elicited from the officer who seized these items. To that end, the officer involved testified that, while conducting the search of the vehicle, he discovered, *inter alia,* a Goodwin AM/FM cassette player and a Sparkomatic equalizer. The officer did not testify regarding serial numbers for these items or that he had seized the items. Neither item was introduced into evidence. Subsequently, one of the victims testified that he had had a car stereo and a Sparkomatic equalizer stolen.

Upon consideration of the totality of the circumstances, and giving due consideration to the body of law relevant to the Fourth Amendment of the United States Constitution, we conclude that the officer could properly testify and describe those items that he was legally in a position to observe by virtue of the search warrant. The eighth assignment of error is overruled.

In his ninth assignment of error, appellant contends that the cumulative effect of errors in the trial court deprived him of the right to a fair trial. In his tenth assignment of error, appellant contends that, for the reasons set forth under assignments one, two, five, seven, eight and nine, the trial court erred in denying his motion for a new trial.

Having reviewed the record in this matter and having found no error as alleged in the preceding assignments, we find that appellant has not been prejudiced by the alleged cumulative effect of errors in the trial court. Accordingly, the ninth assignment of error is overruled.

Likewise, upon consideration of our determinations of assignments one, two, five, seven, eight and nine, we find that the trial court did not err in denying appellant's motion for a new trial. The tenth assignment of error is overruled.

For the reasons stated, the judgment of conviction and sentence entered in the Court of Common Pleas of Marion County is affirmed.

*Judgment affirmed.*

EVANS and THOMAS F. BRYANT, JJ., concur.