OPINION
On November 3, 1998, the Hancock County Grand Jury issued a nine-count indictment against appellant, Yul J. Lee (a.k.a. Willie C. Lee, III). Counts one through three were for Aggravated Robbery, violations of R.C. 2911.01(A)(1), counts four through six were for Kidnapping, violations of R.C. 2905.01(A)(2), and counts seven through nine were for Felonious Assault, violations of R.C. 2903.11(A)(2). Each count contained a firearm specification pursuant to R.C. 2941.145. On December 28, 1998, appellant's case was consolidated with that of co-defendant, Adam Jacobs.
The record indicates that on October 9, 1998, appellant drove from Lima to Findlay with three companions. The purpose of the drive to Findlay was to locate Rudy Ochoa, a friend of co-defendant's, Adam Jacobs, so the foursome could purchase marijuana. Appellant and his companions located Ochoa at his residence along with Jeremy Quiroga and Steve Morris. After appellant and his companions entered Ochoa's residence and learned that they would be unable to purchase marijuana, one of appellant's companions, Anthony Addison, produced a handgun and ordered the three occupants of the house to lie face down on the floor. One victim, Steve Morris, was struck in the face with a telephone receiver and Addison fired one round into the floor in the vicinity of Morris. The three victims were then bound and blindfolded with duct tape and their pockets were were searched. Quiroga had the handgun placed against his head and then his pants were pulled down and the handgun was placed against his penis while he was threatened by Addison to surrender all of his money. Various items, including clothing, credit cards, and cash were then taken from the residence.
Following the incident, appellant and his three companions got back into the car and drove towards Lima. Morris was able to free himself and contact the police. A description of the automobile being driven by the four men was provided to the police. The vehicle was observed on Interstate 75 traveling towards Lima and was stopped. Appellant and his companions were arrested.
On January 20, 1999, appellant was convicted of the three counts of Aggravated Robbery and the three counts of Kidnapping. The jury also returned verdicts of guilty as to firearm specifications for each count. It is from these convictions that appellant now appeals, assigning two assignments of error.
 First Assignment of Error The trial court committed prejudicial error in permitting appellee's rebuttal testimony of James Wall and Detective Tom Davis.
In a criminal case in which an appellant alleges that it was prejudicial error to allow the jury to hear certain testimony, the reviewing court must first determine if it was error to allow the jury to hear this testimony, and if so, whether such error was prejudicial or harmless. Chapman v. California (1967),386 U.S. 18, 87 S.Ct. 824, 17 L.Ed.2d 705, Harrington v. California (1969),395 U.S. 250, 89 S.Ct. 1726, 23 L.Ed.2d 284, State v. Davis (1975), 44 Ohio App.2d 335, 343-344, 338 N.E.2d 793, 800-801; see also State v. Hudnall (Jan. 6, 1996), Marion App. No. 9-94-22, unreported. If the error alleged is not constitutional in nature, the reviewing court must read the record, disregarding the objectionable material, and then determine whether or not there remains "substantial" evidence of the appellant's guilt before it affirms or reverses the judgment of the trial court. Id. Therefore, our analysis begins with the consideration of whether the trial court erred in admitting the rebuttal testimony of James Wall and Detective Tom Davis.
Rebuttal evidence has been defined as "that which is given to explain, repel, counteract, or disprove facts given in evidence by the adverse party," Nickey v. Brown (1982), 7 Ohio App.3d 32,454 N.E.2d 177; " it becomes relevant only to challenge the evidence offered by the opponent, and its scope is limited by such evidence." State v. McNeill (1988), 83 Ohio St.3d 438, 446,700 N.E.2d 596, 605, U.S. cert. denied 119 S.Ct. 1792. It is well established that "[a] party has an unconditional right to present rebuttal testimony on matters that are first addressed in an opponent's case-in-chief and should not be brought in the rebutting party's case-in-chief." Phung v. Waste Mgmt., Inc. (1994), 71 Ohio St.3d 408, 410, 644 N.E.2d 286, 289, citing Katz v. Enzer (1985), 29 Ohio App.3d 118, 504 N.E.2d 427.
The proper scope of rebuttal testimony is within the sound discretion of the trial court and its judgment will not be reversed absent a clear showing of an abuse of that discretion with attendant material prejudice to the defendant. State v. Hymore (1967), 9 Ohio St.2d 122, 128, 224 N.E.2d 126, 130. Thus, a trial court's decision regarding the scope of rebuttal testimony will not be reversed by this Court unless the trial court's decision was unreasonable, arbitrary or unconscionable. State v. Finnerty (1989), 45 Ohio St.3d 104, 108, 543 N.E.2d 1233, 1237.
Appellant asserts that the trial court erroneously permitted the rebuttal testimony of two witnesses, James Wall and Detective Tom Davis. In the interest of clarity, we will address individually the propriety of allowing the respective witnesses to testify.
Appellant first asserts that the trial court erred in allowing James Wall to testify on rebuttal for the State. We note that appellant presented no evidence, testimonial or otherwise, on his own behalf. Appellant's counsel cross-examined various witnesses, however, appellant rested without presenting a case-in-chief. The state's desire for Mr. Wall to testify arose after co-defendant, Adam Jacobs, testified on his own behalf. Following appellant's objection to Wall's testimony and his alternative request for a limiting instruction, the trial court made the following ruling:
 * * * [B]ased upon your cross examination of Mr. Jacobs, you inquired of Davis, and you inquired of Jacobs concerning Mr. Lee's participation in taking things from the premises. Accordingly, the Court is going to permit the rebuttal testimony of Davis as it goes to Jacobs. That's my understanding. And Wall as it goes to Mr. Lee's participation in relation to Jacob's direct and cross examination testimony. * * *
The record indicates the prosecution intended to limit Wall's testimony on rebuttal only to the issue of who struck Steve Morris with the telephone. With respect to such limitation, the trial court stated:
 And once again, that[, the issue of who struck Morris,] was covered in a great deal of detail on Mr. Jacob's direct and cross, and I'm fairly confident redirect, although I need to check my notes as far as redirect is concerned. So in light of the fact that it was covered with Mr. Jacobs in some detail, the Court find it's appropriate rebuttal.
Wall then proceeded to testify that appellant was the individual who struck Morris with the telephone.
Under the reasoning of Phung, a party possesses an unconditional right to present rebuttal testimony if: 1) the testimony would not be appropriate for one's case-in-chief, and, 2) the testimony is first addressed in an opponent's case-in-chief. Under the the first prong of the Phung analysis, we note that testimony concerning who struck Morris with the telephone was presented by the State during its case-in-chief. The record reveals that four of the State's witnesses, Rudy Ochoa, Jeremy Quiroga, Steven Morris, III, and, Lieutenant Charles Wilson, testified in one respect or another concerning the telephone. We find nothing in the record that indicates Wall's testimony was inappropriate for the State's case-in-chief.
Assuming arguendo Wall's testimony was not appropriate for the State's case-in-chief, we then consider the second prong of the Phung analysis. Under this prong, the State's unconditional right to present rebuttal testimony is limited to matters that are first addressed in appellant's case-in-chief. The record makes clear that appellant elected to not present a case-in-chief; consequently, any evidence adduced at trial from Jacobs on behalf of appellant was elicited during cross-examination of Jacobs by appellant. The trial court based its decision to admit the testimony of Wall on the fact that appellant cross-examined Jacobs. We believe such reasoning to be erroneous as rebuttal evidence is generally permissible in response to new facts introduced during an opponent's case-in-chief. The trial court also indicated that its decision to admit Wall's testimony was based in part on Jacobs' direct examination. Appellant is not responsible for any evidence adduced during Jacobs' direct testimony.
Neither prong of the Phung analysis was satisfied; therefore, we hold it was error to allow Wall to testify on rebuttal concerning the telephone and to allow the jury to consider such evidence as it may have related to appellant.
In the event we were to conclude that both prongs of the Phung analysis were satisfied, we still believe that Wall's testimony was inappropriate. Rebutting evidence is that given to explain, refute, or disprove new facts introduced into evidence by the adverse party. In overruling appellant's objection to the rebuttal testimony of Wall, the court reasoned that because counsel inquired of Jacobs concerning Mr. Lee's participation in taking things from the premises, Wall's testimony would be permitted to the extent that such testimony rebutted Jacobs' testimony on direct and cross examination. An analysis of appellant's cross-examination of Jacobs reveals Wall's testimony was not offered to explain, refute, counteract, or disprove any new facts given in evidence by appellant.
During cross-examination, appellant's counsel inquired of Jacobs about whether appellant wanted to buy drugs. He inquired about whether Jacobs and appellant, while riding in the vehicle to Findlay, discussed robbing the victims. He also inquired about what, if anything, appellant was carrying when exiting the house. He further inquired about any conversation Jacobs had with appellant during the ride from the house and before the police stopped the vehicle. He inquired as to whether Jacobs had any knowledge that appellant took anything from the residence. At no time during the cross-examination did appellant inquire about who hit Morris with the telephone.
The trial court reasoned that appellant adduced evidence on cross-examination from Jacobs concerning appellant's "participation" in the incident. Therefore, the trial court found that testimony by Wall concerning who hit Morris with the telephone was admissible rebuttal evidence, notwithstanding that appellant never raised the issue of the telephone during his cross-examination of Jacobs. Although we are mindful that the proper scope of rebuttal testimony is within the sound discretion of the trial court, we are equally mindful that the scope of rebuttal evidence is generally limited to to challenging the evidence offered by the opponent. Given the nature of the consolidated case, our belief that Wall's testimony could have been adduced during the State's case-in-chief, the fact that appellant did not present a case-in-chief, and that the issue of the telephone was not explored by appellant during his cross- examination of Jacobs, we believe the trial court abused its its discretion in admitting the testimony of Wall. The testimony of Wall was outside the scope of permissible rebuttal evidence.
Appellant also asserts that the trial court erred in allowing Detective Tom Davis (hereinafter "Sergeant Davis") to testify in rebuttal for the State. The State's desire for Sergeant Davis to testify also arose after co-defendant, Adam Jacobs, testified on his own behalf. Following appellant's objection to Sergeant Davis' testimony, the trial court found:
 * * * Based upon your cross examination of Mr. Jacobs, you inquired of Davis * * * Accordingly, the Court is going to permit the rebuttal testimony of Davis as it goes to Jacobs.
The transcript indicates the prosecution intended to limit Sergeant Davis' testimony only to the issue of the statement made to Davis by Jacobs. With respect to such limitation, the court stated:
 Well, Mr. Fry made a professional statement that he was going to put Sergeant Davis on and, I think I referred to that concerning Adam Jacob's rendition of the statements that he made to Davis in the detective bureau on the 9th of October 1998.
Sergeant Davis then proceeded to testify concerning his recollection of the statement made by Jacobs to him on October 9, 1998.
When considering the propriety of allowing Sergeant Davis to testify, we again apply the Phung analysis. Under the first prong, we recognize that as part of the court's ruling to consolidate appellant's trial with that of Jacobs', the State was precluded from introducing evidence of the co-defendants' custodial statements unless the co-defendants addressed that issue in their respective cases-in-chief. Consequently, Sergeant Davis' testimony was not appropriate for the State's case-in-chief.
Under the second prong of the analysis, the State's unconditional right to present rebuttal testimony is limited to matters that are first addressed in appellant's case-in-chief. Again, appellant elected to not present his case-in-chief and he rested without calling any witnesses or presenting any evidence. The trial court based its decision to admit Sergeant Davis' testimony on the fact that appellant cross-examined Jacobs concerning Sergeant Davis. Again, we believe such reasoning to be erroneous as rebuttal evidence is generally permissible in response to new facts introduced during an opponent's case-in-chief. The trial court therefore erred in admitting the testimony of Sergeant Davis.
Having concluded that it was error to allow the jury to hear the testimony of Wall and Sergeant Davis, we must next consider whether, disregarding the objectionable material, substantial evidence of appellant's guilt remains. Having reviewed the entire record of trial wherein appellant was convicted, we conclude that appellant was not unfairly prejudiced by the admission of the testimony of either Wall or Sergeant Davis, since, after disregarding the rebuttal testimony of both witnesses, there remains substantial evidence of appellant's guilt.
The record demonstrates that three eyewitnesses identified appellant at trial as the individual who struck Morris with the telephone. Such testimony is capable of reasonable belief. We note that we are not passing judgment on the credibility of any witness, for such determination is primarily left for the jury. Nor are we necessarily concerned with the quantity of evidence remaining. Our task is only to determine whether substantial evidence, capable of belief, remains after the objectionable testimony is disregarded. In this case, we conclude that such evidence remains.
Finding no error prejudicial to appellant, the first assignment of error is overruled.
 Second Assignment of Error The court erred in not merging appellant's Kidnapping convictions with the Aggravated Robbery convictions, for sentencing purposes, pursuant to R.C. 2941.25.
The allied offense statute, R.C. 2941.25, prohibits multiple convictions:
 (A) Where the same conduct by the defendant can be construed to constitute two or more allied offenses of similar import, the indictment or information may contain counts for all such offenses, but the defendant may be convicted of only one.
 (B) Where the defendant's conduct constitutes two or more offenses of dissimilar import, or where his conduct results in two or more offenses of the same or similar kind committed separately or with a separate animus as to each, the indictment or information may contain counts for all such offenses, and the defendant may be convicted of all of them.
In order to determine whether a defendant has been charged with allied offenses of similar import, we look to the two-part test set forth in State v. Blankenship (1988), 38 Ohio St.3d 116, 117,526 N.E.2d 816, 817, in which the Supreme Court held:
 In the first step, the elements of the two crimes are compared. If the elements of the offenses correspond to such a degree that the commission of one crime will result in the commission of the other, the crimes are allied offenses of similar import and the court must then proceed to the second step. In the second step, the defendant's conduct is reviewed to determine whether the defendant can be convicted of both offenses. If the court finds either that the crimes were committed separately or that there was a separate animus for each crime, the defendant may be convicted of both offenses.
If the first step is not met, then the second step need not be considered. However, in the event a court concludes that the elements correspond, the court then examines whether the crimes were committed with separate conduct or a separate animus. If the court finds that the crimes were committed with separate animus, the defendant can be convicted of both offenses. Only if the same conduct supports both offenses or if the court finds that the defendant had a single animus for both offenses, are the offenses found to be allied offenses of similar import.
To determine whether the defendant had a separate animus for both offenses when one of those offenses is Kidnapping, the court must apply the test set forth in State v. Logan (1979), 60 Ohio St.2d 126,397 N.E.2d 1345, syllabus, to determine: (a) whether the "restraint or movement of the victim is merely incidental to a separate underlying crime" indicating a single animus for both offenses; and (b) whether the movement or "restraint of the victim subjects the victim to a substantial increase in risk of harm separate and apart from that involved in the underlying crime, there exists a separate animus as to each efense sufficient to support separate convictions."
Pursuant to the test set forth by the Supreme Court of Ohio in Blankenship, we must first abstractly compare the elements of the two offenses. See State v. Rance (1999), 85 Ohio St.3d 632,637, 710 N.E.2d 699. In the case sub judice, appellant was indicted and convicted on three counts of Aggravated Robbery, in violation of R.C. 2910.01, and on three counts of Kidnapping, in violation of R.C. 2905.01. Aggravated Robbery is defined in relevant part as:
 (A) No person, in attempting or committing a theft offense, as defined in section 2913.01 of the Revised Code, or in fleeing immediately after the attempt or offense, shall do any of the following:
 (1) Have a deadly weapon on or about the offender's person or under the offender's control and either display the weapon, brandish it, indicate that the offender possesses it, or use it;
* * *
Kidnapping is defined in relevant part as:
 (A) No person, by force, threat, or deception, * * * shall remove another from the place where the other person is found or restrain the liberty of the other person, for any of the following purposes:
* * *
 (2) To facilitate the commission of any felony or flight thereafter;
* * *
This court has had occasion to compare the elements of Aggravated Robbery and Kidnapping. See State v. Parker (1991),72 Ohio App.3d 456, 594 N.E.2d 1033; State v. Dunn (Nov. 20, 1991), Marion App. No. 9-89-27, unreported; State v. West (April 13, 1995), Union App. No. 14-94-37, unreported; State v. Allen (March 1, 1988), Allen App. No. 1-86-11, unreported. A review of our previous opinions indicates Aggravated Robbery and Kidnapping are not necessarily allied offenses of similar import. Aggravated Robbery requires a deadly weapon to be on or about the person, or under the control of the accused. Additionally, there is no element of force, threat or deception in this crime. Kidnapping, on the other hand, does not require the presence of a deadly weapon, but it does require force, threat or deception.
Further, the conduct that creates the culpability for Kidnapping under R.C. 2905.01(A)(2) must be for the purpose of facilitating the commission of a felony. However, the conduct, which is proscribed by R.C. 2911.01(A) (1), includes the theft offenses listed in R.C. 2913.01, many of which are misdemeanors. Thus, as we concluded in our previous opinions, an analysis of the elements of these crimes, as charged, indicates they are not allied offenses of similar import because we do not find sufficient similarity between the elements of the two crimes; the crimes do not correspond to such a degree that commission of one offense constitutes commission of another. Accordingly, appellant's second assignment of error is overruled.
We note that both appellant and appellee rely upon State v. Logan (1979), 60 Ohio St.2d 126, and its progeny for the proposition that inherent in every Robbery is the restraint necessary to accomplish the Robbery; such resultant restraint constituting Kidnapping so long as the restraint is incidental to the separate underlying crime of Robbery. We do not believe that proposition to be correct or applicable to our analysis.
In making the observations concerning the interplay between Robbery and Kidnapping, the Logan Court was not comparing the elements of the two crimes. Rather, the Court endeavored to " establish reasonable criteria for the determination of what might constitute separate animus, within the meaning of R.C. 2941.25(B), when a defendant has been charged with multiple offenses including kidnapping." The Court stated: "Where an individual's immediate motive involves the commission of one offense, but in the course of committing that crime he must, a priori, commit another, then he may well possess but a single animus " Logan,60 Ohio St.2d at 131. As an example of such a situation, the Court cited Robbery and Kidnapping.
The proposition upon which appellant and appellee both rely is clearly applicable when a court reaches the issue of separate animus, the second step in the analysis, however, we believe the proposition is not dispositive when engaging in the comparison of the elements of the crimes charged, the first step in the analysis. In other words, had we concluded the crimes of Aggravated Robbery and Kidnapping were allied offenses of similar import, we would have then considered the instruction of the Logan Court regarding the nature of the restraint intrinsic in the crime of Robbery. Because we have not reached that conclusion in this case, such consideration is not necessary.
Finding no error prejudicial to appellant, in the particulars assigned and argued, we affirm the judgment of the trial court.
Judgment affirmed.
HADLEY and WALTERS, JJ., concur separately.