OPINION
Defendant-appellant Demetrius L. Jennings appeals his conviction and sentence from the Stark County Court of Common Pleas on one count of involuntary manslaughter, in violation of R.C. 2903.04, with a firearm specification, R.C. 2941.145.
 STATEMENT OF THE FACTS AND CASE
On October 21, 1998, Demetrius L. Jennings [hereinafter appellant] and a co-defendant, Jared J. Scott, were indicted on one count of aggravated murder in violation of R.C. 2903.01, with a firearm specification. On October 23, 1998, Jennings pled not guilty. A joint trial began on April 26, 1999. The following facts were elicited at trial: Shortly before 1:00 P.M., Scott was sitting in his car waiting for his girlfriend and baby to come out of his house to join him. As he sat in the car, another car pulled up behind him. A male that he had seen before but could not identify, got into Scott's car. Another man got out of the car that was behind Scott. That man came to the passenger side of Scott's car and said "remember me bitch" as he pulled a gun. Scott ran to his house to get away from the men, as the men fired at Scott. Scott later identified the man shooting at him as Lapierre Toles. Scott reported this incident to the police. Scott told the officers that Toles was responsible for the shooting and indicated that he did not know the other individual. Jennings arrived at Scott's residence after the incident. While the police investigated the incident, Jennings returned to his home to change clothes and retrieve a .38 caliber revolver. Jennings then returned to Scott's residence. As police officers finished their report, Scott, Scott's girlfriend, a baby and Jennings, left Scott's residence in Scott's vehicle. Scott testified that he took his girlfriend and her baby to the baby's grandmother's house on May Place, N.E., Canton. After dropping off Scott's girlfriend and baby, Scott and Jennings left the house on May Place, N.E. Meanwhile, Allen Anderson and several other individuals were walking in the vicinity of Gibbs and 7th Street, N.E., Canton, Ohio. Scott's vehicle approached the four way stop sign at the Gibbs and 7th Street intersection and came to a complete stop. Conflicting testimony was presented as to what happened next. The State presented evidence that after stopping the vehicle, and without provocation, Scott and Jennings got out of their vehicle. Witnesses testified that as he got out of the car, Scott had a gun behind his back and said something to Anderson. Anderson said something back and Scott and Jennings began firing shots in the direction of Anderson. Anderson and the individuals who had been standing with Anderson, began to flee. As Anderson was running down an alley, he was struck in the back by a bullet. Witness William Caddell testified that he saw Scott get out of the car with a gun behind his back. After comments were exchanged, he saw the driver, Scott, start shooting and a man in the crowd stood there shooting while everyone else in the crowd ran. This witness testified that the car in which Scott and Jennings were riding could not go anywhere but past the group of people standing on the street. Anderson was a part of that group. However, another witness testified that Anderson drew his gun first. This witness testified that when Scott and Jennings saw Anderson with his gun drawn, they got out of the car with their guns drawn. This witness testified that he did not know who fired first. Another witness, Raymond Powell, testified that he saw a man in the crowd produce a gun and start shooting. He then saw the men in the car, Scott and Jennings, get out of the car with guns in their hands. He testified that the shots stopped when Anderson ran down an alley. Several bullet casings were recovered from the scene. They were found in the vicinity of where Scott had been standing. The bullet casings were examined by a firearms expert and found to be consistent with bullet casings found in Scott's bedroom. Conversely, no shell casings or bullet fragments were found in the alley or area in which Anderson had been standing. The bullet that struck Anderson was recovered and found not to be consistent with Scott's shell casings found at the scene. The bullet that struck Anderson was fired from a .38 caliber revolver while Scott's shell casings had been fired from a semi-automatic weapon. Jennings fired a .38 caliber revolver at Anderson. Scott testified on his own behalf. Scott identified Anderson as the man that came to his car earlier that day. Scott also testified that when he approached the stop sign at 7th Street and Gibbs, he saw a man pointing a gun in his car. He then slammed the car into park and jumped out of the car. As he did this, he was fired upon. Scott testified that he fell back four steps, remembering that he had a gun and returned fire. After the shooting, Scott and Jennings got back in the car and left the scene. While fleeing from the scene Jennings threw his .38 caliber revolver toward a sewer drain. Upon the conclusion of the presentation of evidence, the trial court instructed the jury on the affirmative defense of self-defense and possible lesser included offenses. The jury found Jennings guilty of the lesser included offense of involuntary manslaughter, with a gun specification. By Judgment Entry filed May 11, 1999, the trial court sentenced Jennings to ten years in prison on the manslaughter conviction and three years of incarceration on the gun specification. The sentences were ordered to be served consecutive to each other. It is from this conviction and sentence that appellant prosecutes this appeal, raising the following assignments of error:
 ASSIGNMENT OF ERROR I THE JUDGMENT OF CONVICTION BY THE TRIAL COURT AND VERDICT OF THE JURY AS TO THE CHARGES CONTAINED IN THE INDICTMENT WERE AGAINST THE MANIFEST WEIGHT OF THE EVIDENCE.
 ASSIGNMENT OF ERROR II DEFENDANT'S COUNSEL WAS INEFFECTIVE IN REPRESENTING DEFENDANT BY FAILING TO TIMELY AND PROPERLY MOVE FOR A SEVERANCE OF DEFENDANTS PRIOR TO TRIAL.
 ASSIGNMENT OF ERROR III THE COURT ERRED IN FAILING TO GRANT DEFENDANTS [SIC] MOTION FOR SEVERANCE.
 I
In appellant's first assignment of error, Jennings contends that his conviction was against the manifest weight of the evidence. Jennings argues that the evidence presented by the State was contradictory, that the crime scene was left unattended for three days before a subsequent search was conducted by the ID Bureau of the Canton Police Department and that Jennings did not fire a weapon until his co-defendant, Scott, and the decedent, Anderson, were firing. Therefore, Jennings concludes that the State failed to prove each and every element of the lesser included offense of Involuntary Manslaughter with a Firearm Specification. We disagree. On review for manifest weight, a reviewing court is to examine the entire record, weigh the evidence and all reasonable inferences, consider the credibility of witnesses and determine whether in resolving conflicts in the evidence, the jury clearly lost its way and created such a manifest miscarriage of justice that the conviction must be reversed and a new trial ordered. The discretionary power to grant a new trial should be exercised only in the exceptional case in which the evidence weighs heavily against conviction. State v. Thompkins (1997) 78 Ohio St.3d 380,387, 678 N.E.2d 541 (citing State v. Martin (1983),20 Ohio App.3d 172, 175, 485 N.E.2d 717). In order to convict appellant of involuntary manslaughter, the State was required to prove, beyond a reasonable doubt, that appellant caused the death of Anderson as a proximate result of the offender's committing or attempting to commit a felonious assault or did aid or abet another in so doing. See R.C. 2903.04 (A), Involuntary Manslaughter. Further, the State had to prove that appellant had a firearm on or about the offender's person or under the offender's control while committing the offense and displayed the firearm, brandished the firearm, indicated that the offender possessed the firearm, or used it to facilitate the offense. R.C. 2941.145, Specification Concerning Use of Firearm to Facilitate Offense. Appellant contends that much of the testimony of the State's witnesses were contradictory and that inferences contained in the testimony of the State's witnesses were consistent with both guilt and innocence. Appellant claims that "such inferences should have been decided in favor of the defendant and for the jury not to do so was against the manifest weight of the evidence". Appellant's Merit Brief at 12. We disagree. Appellant cites this court to State v. Mattison (1985), 23 Ohio App.3d 10, 490 N.E.2d 926, which provides guidelines to be employed to determine whether a judgment is against the manifest weight of the evidence. The Mattison court listed the following factors: 1. The reviewing court is not required to accept as true the incredible; 2. Whether the evidence is uncontradicted; 3. Whether a witness was impeached; 4. What was not proved; 5. The certainty of the evidence; 6. The reliability of the evidence' 7. Whether a witness' testimony is self-serving; 8. Whether the evidence is vague, uncertain, conflicting or fragmentary.
In the case sub judice, Jennings argues that contradictory evidence should have been decided in favor of acquittal. However, a review of Mattison reveals that the appellate court found that the fact that there were inconsistencies in the testimony merely placed the witnesses credibility in issue. State v. Mattison (1985) 23 Ohio App.3d 10, 15, 490 N.E.2d 926. Credibility of witnesses is primarily for the trier of fact. State v. DeHass,10 Ohio St.2d 230, 231, 227 N.E.2d 212. We find that there is evidence upon which the jury could base its verdict. There is no question that Jennings and Scott shot at Anderson. Anderson was involved in the prior shooting at Scott's residence in which Scott was the intended victim. Jennings retrieved his revolver after he learned of the shooting at Scott's residence. While there are conflicting versions of the altercation between Jennings, Scott and Anderson, the State presented testimony that Scott and Jennings instigated the incident when they got out of their car, Scott having a gun behind his back. After an exchange of comments with Anderson, Scott and Jennings began firing at Anderson. Evidence showed that Anderson was struck and killed by a bullet fired by a weapon such as was used by Jennings. It is undisputed that Anderson was shot in the back. Testimony showed that Anderson was running away, down an alley when a bullet consistent with the weapon fired by Jennings struck him in the back. The jury, in this case, had to decide which witnesses were more credible. The credibility of witnesses is a question for the trier of fact, who is better situated to observe the witnesses' demeanor, gestures, and voice inflections. See State v. Hill (1996) 75 Ohio St.3d 195,661 N.E.2d 1068; Myers v. Garson (1993), 66 Ohio St.3d 610,614 N.E.2d 742. The jury apparently chose to believe the testimony that Jennings' caused the death of Anderson as a proximate result of the appellant's commission of a felony or in attempting to commit a felony. After a thorough review of the record, we are not convinced that the jury's decision to disbelieve contentions of self-defense and find that appellant committed involuntary manslaughter, with a firearm specification, was a manifest miscarriage of justice. We find the jury's verdict is supported by the manifest weight of the evidence. Appellant's first assignment of error is overruled.
 II III
In appellant's second assignment of error, appellant contends that he was denied a fair trial, due process of law, and the effective assistance of counsel when his trial counsel did not timely and properly move for a severance of defendants prior to the trial. In the third assignment of error, appellant contends that the trial court erred when it failed to grant appellant's motion to separate the trials of Scott and Jennings. We will address appellant's second and third assignments of error, together and in reverse order. The joinder of defendants and the avoidance of multiple trials is favored in the law because joinder conserves judicial and prosecutorial time, lessens the not inconsiderable expenses of multiple trials, diminishes inconvenience to witnesses and minimizes the possibility of incongruous results in successive trials before different juries. State v. Thomas (1980), 61 Ohio St.2d 223, 225,400 N.E.2d 401, 404. R.C. 2945.13 states: When two or more persons are jointly indicted for a felony, except a capital offense, they shall be tried jointly unless the court, for good cause shown on application therefor by the prosecuting attorney or one or more of said defendants, orders one or more of said defendants to be tried separately. Whether an accused shall be tried separately from a co-defendant is a matter within the sound discretion of the trial court. State v. Abbott (1949), 152 Ohio St. 228, 89 N.E.2d 147. Joinder is the rule rather than the exception. The burden is upon the defendant to show good cause why a separate trial should be granted and that the trial court abused its discretion in refusing to do so. To prevail on his claim that the trial court erred in denying his motion to sever, the defendant has the burden of demonstrating three facts. He must affirmatively demonstrate (1) that his rights were prejudiced, (2) that at the time of the motion to sever he provided the trial court with sufficient information so that it could weigh the considerations favoring joinder against the defendant's right to a fair trial, and (3) that given the information provided to the court, it abused its discretion in refusing to separate the charges for trial. State v. Torres (1981), 66 Ohio St.2d 340, 421 N.E.2d 1288, syllabus. A trial court is to grant a severance of defendants "[i]f it appears that a defendant or the state is prejudiced by a joinder of offenses or of defendants in an indictment, information, or complaint, or by such joinder for trial together of indictments, informations or complaints. . . ." Crim.R. 14. However, "[m]utually antagonistic defenses are not prejudicial per se." Richardson v. Marsh (1987), 481 U.S. 200, 107 S.Ct. 1702,95 L.Ed.2d 176. A defendant claiming error in the trial court's refusal to sever offenses or defendants has the burden to affirmatively showing that his rights were prejudiced by the joinder. State v. Torres (1981),66 Ohio St.2d 340, 421 N.E.2d 1288. Defense counsel raised the issue of severance of the trials, for the first time, after a jury was seated and during a discussion regarding the issue of a jury view of the Scott residence. Tran. at 137-139. That residence is where the initial shooting took place at which time it appeared that Scott, the co-defendant, was the intended victim of the shooting. Jennings was not present at the time of that shooting. At that time, defense counsel made the following statements to the trial court regarding his request for separate trials: "MR. LODICO: I object to that only in that there is an incident that occurred there [Scott's residence]. It is nonrelated to my client in any manner, shape, or form. If we are going to proceed and the Court is going to do that, then obviously we are moving in two different directions. I would ask at this point that my client be permitted to withdraw at this point and step back and come back with a different jury without any prejudice being attached or double jeopardy. THE COURT: The State's motion will be granted, and [t]hat motion of the defense would be denied.
 MR. MACKEY: On behalf of Mr. Scott, we do not oppose the State's motion to take the jury to the residence that have been asked.
 MR. LODICO: Just for the record, for the record in event of appeal, again I stress to the Court that at this point we have already had three occasions, if not more, in which it appears that our two paths will separate. I believe that it can only be prejudicial to Jared [Scott] and likewise to Demetrius [Jennings] if we continue to have two antagonistic type approaches from the two Defense Attorneys. I have indicated it has happened three times. I foresee it happening again. I would ask the Court to at this time let myself and Mr. Jennings withdraw without prejudice before it gets any worse or before we get into it any further. That will be an ongoing objection.
 THE COURT: That is placed on the record, and that does not qualify relative to the separate trials aspect. So that motion will be denied."
Transcript of Proceedings at 137-139.
Defense counsel again raised the issue of severance during the cross-examination of Scott. Defense counsel and the trial court made the following statements:
 Q. Now, when did you [Scott] decide that this was self-defense?
 MR. LODICO: Objection. I object. May we approach?
 THE COURT: Sustained, counsel . . . (A conference was had at the bench outside the hearing of the jury.)
 MR. McGINNIS: Yeah, let's trade places then. I guarantee you they hear everything he says no matter where he stands. Judge, this Defendant maintained up until a week before this trial started that he wasn't even there. I believe it is relevant to determine when he decided what was a better defense for him. If the alibi was in fact not true and he was maintaining that, I have a right to inquire of him and other potential witnesses whether or not he was trying to indoctrinate him. If the alibi was in fact not true and he was maintaining that, I have a right to inquire of him and other potential witnesses whether or not he was trying to indoctrinate him.
 MR. LODICO: That's why I asked for a separation of these cases. Now they are trying to stick it up a bad place for me. I asked for a separation of this trial.
 THE COURT: You had an opportunity before this case started to file for separation, and you did not do that.
 MR. LODICO: We were not aware that there was going to be a divergent thing; and now for him to come in during the trial and say I never filed alibi that lets everybody know we had different defenses in the beginning.
 THE COURT: You did not take advantage of that. So let me finish. The problem I am concerned with, I agree that that is a divergence of positions. The problem I am concerned with is the references, the same by Mr. LoDico did initially as to using the phraseology self-defense. I prohibited that and I will prohibit it now."
Transcript of Proceedings at 827-830.
Appellant contends that the trial court's comments demonstrate that the trial court found a distinct divergence of positions between the defendants and recognized the prejudice of a joint trial but failed to order separate trials because counsel had failed to timely raise the issue. On appeal, appellant argues that the trial court's comments are proof enough that the trial court was troubled over the issue and that prejudice was shown. Appellant argues that, under the totality of the circumstances, the trial court's comments indicate the issues of good cause and prejudice had been shown. We disagree. While the trial court did recognize that at some point previously the defenses of the co-defendants had diverged, the trial court made no finding as to prejudice to Jennings. Tran. at 827-830. Further, we do not find that appellant made a sufficient showing of prejudice at the time of trial or on this appeal. Jennings' defense counsel's comments at trial claim that the two defense attorneys were presenting antagonistic "type approaches" and that the attorneys have taken separate paths. Jennings' counsel refers to three instances where this separation has occurred but does not give the trial court any specifics as to the instances he alleges nor provide the court with any argument as to how these instances prejudiced Jennings. Therefore, we find that the trial court did not abuse its discretion in denying appellant's motion for separate trials. Now that we have determined that the trial court did not error in denying appellant's motion for separate trials, we will consider Jennings' claim that defense counsel was ineffective when counsel failed to timely and properly request severance of the co-defendants' trials. The standard of review for a claim of ineffective counsel was established in Strickland v. Washington (1984), 466 U.S. 668, 104 S.Ct. 2052, 80 L.Ed.2d 674 and adopted by Ohio in State v. Bradley (1989), 42 Ohio St.3d 136,538 N.E.2d 373. These cases set forth a two-pronged analysis. The first prong of the analysis requires a showing that counsel's assistance was ineffective in that it fell below an objective standard of reasonable representation and violated essential duties to the client. The second prong requires a showing of actual prejudice by counsel's ineffectiveness such that but for the counsel's unprofessional error the outcome of the trial would have been different. A court may dispose of a case by considering the second prong first, if that would facilitate disposal of the case. Bradley, 42 Ohio St.3d at 143 (citing Strickland,466 U.S. at 697.) Appellant argues that his counsel was ineffective for failing to request a severance of his trial from that of his co-defendant. We find no need to analyze trial counsel's conduct because we find that appellant was not prejudiced. See Bradley, supra. Appellant points out that the initial shooting took place at Scott's residence and that appellant was not present at that shooting. Appellant contends that he was placed in the position of having to pattern his defense in tandem with Scott's defense. Appellant contends appellant was prejudiced when information regarding the prior shooting, which involved only Scott, was used by the State to bolster the State's argument that appellant was at fault in creating the situation giving rise to the death of Anderson. However, applying the second prong of Strickland, we find that Jennings was not prejudiced by counsel's conduct. Appellant obtained a .38 caliber revolver after hearing of the incident at Scott's home. Both Scott and appellant, while driving in Scott's car, ended up in the immediate vicinity of a group of people which included Anderson, the person who had been to Scott's house and gotten into Scott's car. Neither appellant nor Scott pursued an alibi defense, but claimed they fired in self-defense at the group of people. Anderson was struck in the back and killed by a bullet fired by a revolver of the same caliber as appellant admitted firing. The bullet that killed Anderson was inconsistent with the semi-automatic pistol fired by Scott. After the shooting of Anderson, Jennings disposed of his .38 caliber revolver. We find the evidence against each defendant was direct and uncomplicated so that the jury was capable of segregating proof as to each defendant. See State v. Parker (1991), 72 Ohio App.3d 456,594 N.E.2d 1033 (citing State v. Brooks (1989), 44 Ohio St.3d 185,542 N.E.2d 636). Further, we are unpersuaded that evidence regarding the prior shooting at Scott's residence would have been inadmissible as to the appellant if appellant had been tried separately. Such evidence could have been admitted at Jennings' trial to provide evidence of the motive for the subsequent shooting.
Appellant's second and third assignments of error are overruled. The Judgment of the Stark County Court of Common Pleas is affirmed.
 _________________ EDWARDS, J.
By Edwards, J. Farmer, P.J. and Wise, J. concurs.