OPINION
Defendant-appellant James Vargas appeals his conviction and sentence from the Stark County Court of Common Pleas on one count of aggravated robbery in violation of R.C. 2911.01 with a firearm specification, and one count of having weapons under disability in violation of R.C. 2923.13. Plaintiff-appellee is the State of Ohio.
 STATEMENT OF THE FACTS AND CASE
On November 22, 2000, the Stark County Grand Jury indicted appellant on one count of aggravated robbery in violation of R.C. 2911.01, a felony of the first degree, with a firearm specification and a repeat violent offender specification, and one count of having weapons while under disability in violation of R.C. 2923.13, a felony of the third degree. At his arraignment on December 1, 2000, appellant entered a plea of not guilty to the charges contained in the indictment. Thereafter, a jury trial commenced on January 16, 2001. The following evidence was adduced at trial.
At approximately 11:00 p.m. on October 25, 2000, 19-year-old Jeremy Dentler drove into a Duke and Duchess gas station to purchase cigarettes and cigars. Dentler got out of his car, which was a 1993 black Honda Civic Del Sol, went up to the store window, and purchased the items. He then walked back to his car. As Dentler was unlocking the door, a red dot appeared on his chest. When he looked up, Dentler saw two men approaching him, both carrying handguns. The red dot, according to Dentler, was the laser site "from like a pistol." Trial Transcript at 167.
Dentler noted that both men were black, and were wearing baggy clothes. One man was a little taller and appeared to be older than the other. The taller man, Dentler testified, was wearing a stocking cap on his head, while the shorter man wore a red baseball cap turned backwards.
At trial, Dentler testified that the taller man pointed the laser gun in Dentler's face. The taller man then asked Dentler for drugs, and asked him if he had any money. After replying in the negative, Dentler looked toward a van parked on the side of the parking lot, and noticed a woman sitting inside. At trial, Dentler testified that the taller man said to him, "Don't look at her," and struck Dentler twice in the head. Trial Transcript at 170. When Dentler fell to the ground, the men struck him several more times in the back of the head.
The two men ripped off Dentler's jacket and shirt and demanded his car keys. Dentler testified that the taller man then got into Dentler's car, and said, "Don't f'ing look up, or you will die" Trial Transcript at 171. Thereafter, Dentler saw the men drive away in his car with the van following behind. Dentler managed to get up, and go to the store window. The police were contacted and provided with a description of the vehicles involved.
At 11:08 p.m., Canton Police officers John Gabbard and Mike Talkington received a call concerning the disturbance at the gas station. At trial, Officer Gabbard testified as follows:
 We received a call reference a robbery at the Duke 
Duchess station where we were informed that a vehicle had been taken in a robbery and that two black males and at least one female had robbed a man of a black Honda Civic which then fled southbound on Harmont Avenue, N.E., being followed by a dark colored mini van.
Trial Transcript at 246. At 11:13 p.m., the officers observed two vehicles matching the descriptions, driving slowly together, in a westbound direction on 19th Street. According to Officer Gabbard, the two vehicles "were driving very close together, one in front of the other". Trial Transcript at 251. The officers then pulled behind the vehicles and activated their overhead lights. While the Honda belonging to Dentler pulled over, the van continued driving down the road. The driver's door of the Honda then opened, and the driver stepped out. After the driver fled, dropping a gun as he left the scene, a foot chase ensued. According to Officer Gabbard, the driver of the Honda was wearing dark blue jeans, boots, a blue jacket, a red shirt, and a blue cap.
During the chase, the driver of the Honda ran up to the van, which had pulled over on the side of the road. After an individual in dark clothing exited the van, the two began running eastward. Officer Gabbard discovered both males behind a garage and ordered them to the ground. While the individual in the van, who identified himself as Cedric Neeley, was taken into custody, the driver of the Honda "stopped for a moment and then immediately ran westbound around the side of the garage". Trial Transcript at 264. The man, who Officer Gabbard identified as appellant, was later apprehended. A .20 gauge shotgun and a .380 pistol were found in the grass near the where the two men had been discovered behind the garage.
At trial, appellant's son, Brian Wilson, testified on his father's behalf. Wilson testified that on October 25, 2000, he was at the Duke and Duchess gas station with appellant, with Cedric Neeley, the co-defendant in this case, and with Jason McDonald, Wilson's friend. According to Wilson, "we [Wilson and McDonald] was on the side of the gas station relieving ourselves; and from that time, I turned around, Jason [McDonald] and I approached a white guy that was coming to his car —". Trial Transcript at 412. Wilson further testified that McDonald, who "had a gun on the guy", asked the guy (Dentler), "for whatever he had". Trial Transcript at 435, 436. According to Wilson, McDonald then struck Dentler and asked him for his car keys. The two, Wilson testified, then got into Dentler's car and drove away with appellant and Cedric Neeley following after them in a van while yelling at McDonald, the driver, to pull over. According to Wilson, after McDonald refused to comply with appellant's command to get out of the stolen car, appellant forcibly removed McDonald from the same. Wilson further testified that when McDonald left the scene, appellant got into the stolen vehicle in order to park it on the side of the road. Shortly thereafter, Officers Gabbard and Talkington arrived on the scene.
During trial, the Prosecutor dismissed the repeat violent offender specification and the charge of having weapons while under disability was amended to a felony of the fifth degree.
At the conclusion of the evidence and the end of deliberations, the jury, on January 18, 2001, found appellant guilty of aggravated robbery with a firearm specification and having weapons while under disability. As memorialized in an entry filed on January 31, 2001, the trial court sentenced appellant to nine years in prison for aggravated robbery and to three years for the firearm specification. The trial court further ordered that the above sentences be served consecutively. In addition, the trial court imposed an eleven month prison sentence for having weapons while under disability and ordered the same to be served consecutively with the above sentence.
It is from his conviction and sentence that appellant now prosecutes his appeal, raising the following assignments of error:
 THE TRIAL COURT ERRED IN ADMITTING A TAINTED IN COURT IDENTIFICATION OF APPELLANT IN VIOLATION OF APPELLANT'S CONSTITUTIONAL RIGHTS TO DUE PROCESS AND A FAIR TRIAL.
 APPELLANT'S CONVICTIONS FOR AGGRAVATED ROBBERY WITH A FIREARM SPECIFICATION AND HAVING A WEAPON WHILE UNDER A DISABILITY WERE AGAINST THE SUFFICIENCY OF THE EVIDENCE IN VIOLATION OF THE FIFTH AND FOURTEEN AMENDMENTS TO THE FEDERAL CONSTITUTION AND SECTION 16, ARTICLE I OF THE OHIO CONSTITUTION.
 APPELLANT'S CONVICTIONS FOR AGGRAVATED ROBBERY WITH A FIREARM SPECIFICATION AND HAVING A WEAPON WHILE UNDER DISABILITY WERE AGAINST THE MANIFEST WEIGHT OF THE EVIDENCE IN VIOLATION OF THE FIFTH AND FOURTEENTH AMENDMENTS OF THE FEDERAL CONSTITUTION AND SECTION 1, ARTICLE I OF THE OHIO CONSTITUTION.
 THE RECORD FAILS TO SUPPORT A FINDING THAT CONSECUTIVE SENTENCES WERE NECESSARY TO PROTECT THE PUBLIC FROM FUTURE CRIME OR TO PUNISH THE APPELLANT AND/OR THAT THE CONSECUTIVE SENTENCES WERE NOT DISPROPORTIONATE TO THE SERIOUSNESS OF THE APPELLANT'S CONDUCT AND THE DANGER POSED TO THE PUBLIC IN VIOLATION OF OHIO REVISED CODE SECTION 2929.14.
 APPELLANT WAS DENIED EFFECTIVE ASSISTANCE OF COUNSEL IN VIOLATION OF THE SIXTH AMENDMENT OF THE FEDERAL CONSTITUTION AND ARTICLE I, SECTION 10 OF THE OHIO CONSTITUTION.
 I
Appellant, in his first assignment of error, argues that the trial court erred in overruling appellant's oral motion to limit Dentler's in-court identification of appellant as the perpetrator of the crime on the basis that Dentler's identification was unreliable. Prior to the commencement of trial, appellant had asked the court to prohibit Dentler from identifying appellant and his co-defendant as the perpetrators of the crime when Dentler took the stand. Appellant now specifically argues that, at trial, "[d]efense counsel argued that the police did not do a line-up or a photo array; that the description James Dentler gave to the police was vague; and that the in court identification would be inherently suggestive and unreliable".
In determining the reliability of an identification, the test to be applied is whether, under the totality of the circumstances, the identification is reliable even though the confrontation procedure was suggestive. E.g., State v. Parker (1990), 53 Ohio St.3d 82, 87. In making this determination, the court must consider: (1) the opportunity of the witness to view the criminal at the time of the crime, (2) the degree of attention of the witness, (3) the accuracy of the witness' prior description of the criminal, (4) the level of certainty demonstrated by the witness at the confrontation, and (5) the length of time elapsed between the crime and the identification. Neil v. Biggers (1972),409 U.S. 188, 199-200.
The issue of the in-court identification of Cedric Neeley, appellant's co-defendant, was directly addressed by this Court in State v. Neeley
(Dec. 17, 2001), Stark App. No. 2001-CA-00059, unreported. This Court, in Neeley, specifically held as follows in holding that the in-court identification of Neeley by Dentler, the victim herein, did not deprive Neeley of his rights to due process and a fair trial:
 In the instant case, the perpetrators directly confronted Dentler with guns. They did not attempt to conceal their identities, and he had ample opportunity to observe them. He noticed specific things about the men, such as their race, relative height, and relative age. He described the guns the men were carrying, and recalled that it was the taller man's gun that had the laser. He described the clothing the two men were wearing. He noted that the taller man wore a knit stocking cap, while the shorter man wore a red ball cap worn backwards. He identified the two hats recovered from appellant and his co-defendant by the police as looking similar to the ones he noticed at the gas station. He recalled that the taller man did the talking, and was the man who drove the car away. Further, his description of the men matched the individuals caught by police minutes after the crime was committed, and they traveled in the vehicles described by Dentler. He was certain about his identification of the perpetrators. Further, the lapse of time between the incident and the in-court identification was not great. The crime occurred on October 25, 2000, and the case went to trial on January 16, 2001. The identifications by the victim were sufficient to permit his in-court identification of appellant. Any discrepancies in his description went to the weight to be given the identification evidence, rather than its admissibility.
Id. Furthermore, as in Neeley, appellant in the case sub judice argues that the in-court identification by Dentler was inherently unreliable since appellant and his co-defendant were the only two African-American men in the courtroom at the time the identifications were made. However, as this Court noted in Neeley, "it is impossible to prevent the possibility that in some cases the only African-American in the courtroom is the defendant himself". Id. Moreover, as we noted in Neeley, neither appellant nor his co-defendant made any effort to conceal their identities from Dentler at the time of the crime.
For the same reasons as set forth in Neeley, supra., we find that the trial court did not err to the prejudice of appellant in admitting Dentler's in-court identification of appellant.
Appellant's first assignment of error is, therefore, overruled.
 II, III
Appellant, in his second and third assignments of error, contends that his convictions for aggravated robbery with a firearm specification and for having weapons while under disability are against the manifest weight and sufficiency of the evidence. We disagree.
In State v. Jenks (1981), 61 Ohio St.3d 259, the Ohio Supreme Court set forth the standard of review when a claim of insufficiency of the evidence is made. The Ohio Supreme Court held:
 An appellate court's function when reviewing the sufficiency of the evidence to support a criminal conviction is to examine the evidence admitted at trial to determine whether such evidence, if believed, would convince the average mind of the defendant's guilt beyond a reasonable doubt. The relevant inquiry is whether, after viewing the evidence in a light most favorable to the prosecution, any rational trier of fact could have found the essential elements of the crime proven beyond a reasonable doubt.
Jenks, supra, at paragraph two of the syllabus. On review for manifest weight, a reviewing court is to examine the entire record, weigh the evidence and all reasonable inferences, consider the credibility of the witnesses and determine "whether in resolving conflicts in the evidence, the jury clearly lost its way and created such a manifest miscarriage of justice that the conviction must be reversed . . . The discretionary power to grant a new trial should be exercised only in the exceptional case in which the evidence weighs heavily against the conviction."State v. Thompkins (1997), 78 Ohio St.3d 380, 387, citing State v.Martin (1983), 20 Ohio App.3d 172, 175. Because the trier of fact is in a better position to observe the witnesses' demeanor and weigh their credibility, the weight of the evidence and the credibility of the witnesses are primarily for the trier of fact. State v. DeHass (1967),10 Ohio St.2d 230, syllabus 1.
In the case sub judice, appellant was convicted of one count of aggravated robbery in violation of R.C. 2911.01 with a firearm specification[1], and one count of having weapons under disability in violation of R.C. 2923.13. R.C. 2911.01 states, in relevant part, as follows:
 (A) No person, in attempting or committing a theft offense, as defined in section 2913.01 of the Revised Code, or in fleeing immediately after the attempt or offense, shall do any of the following:
 (1) Have a deadly weapon on or about the offender's person or under the offender's control and either display the weapon, brandish it, indicate that the offender possesses it, or use it;
In turn, R.C. 2923.13 provides, in pertinent part, as follows:
 (A) Unless relieved from disability as provided in section 2923.14 of the Revised Code, no person shall knowingly acquire, have, carry, or use any firearm or dangerous ordnance, if any of the following apply: . . .
 (2) The person is under indictment for or has been convicted of any felony offense of violence or has been adjudicated a delinquent child for the commission of an offense that, if committed by an adult, would have been a felony offense of violence.
Construing the evidence in a light most favorable to the prosecution, we find that any rational trier of fact could have found that appellant committed the offenses of aggravated robbery with a firearm specification, and having weapons while under disability. At the trial in this matter, Dentler testified that two black men who approached him at the Duke and Duchess and robbed him of his car while brandishing or displaying guns were wearing baggy clothes. According to Dentler, while one of the men was wearing a stocking cap, the other had on a baseball cap turned backwards. In court, when questioned, Dentler identified one of the men as appellant and the other as Cedric Neeley. Furthermore, the subsequent investigation and apprehension of appellant and Neeley, his co-defendant, supported Dentler's in-court identification of the two men as the perpetrators. Just moments after the attack, appellant was discovered driving Dentler's Honda Civic while Neeley was in a van matching Dentler's description. Both their clothing and the weapons recovered by police were consistent with Dentler's description. In addition, appellant was convicted in 1991 for burglary[2], a felony offense of violence. Based on the foregoing, we find that appellant's convictions for aggravated robbery with a firearm specification, and having weapons while under disability were not against the sufficiency of the evidence.
We further find that appellant's convictions for aggravated robbery and having weapons while under disability were not against the manifest weight of the evidence. Upon our review of the evidence as a whole, we cannot say that the jury lost its way so as to create a manifest miscarriage of justice. While appellant points out that Brian Wilson, appellant's son, testified at trial that he and Jason McDonald approached Dentler that night and that McDonald took Dentler's car keys, the jury, as trier of fact, was free to either believe or disbelieve such testimony. Clearly, the jury found Wilson's testimony to be lacking in credibility.
Appellant's second and third assignments of error are, therefore, overruled.
 IV
Appellant, in his fourth assignment of error, challenges the trial court's imposition of consecutive sentences. As is stated above, the trial court in this matter sentenced appellant to nine years in prison for aggravated robbery and to three years for the firearm specification. The trial court further ordered that the above sentences be served consecutively with each other and consecutive to appellant's eleven month sentence for having weapons while under disability. Appellant now maintains that the record fails to support the trial court's findings that consecutive sentences were necessary to protect the public from future crime or to punish appellant and/or that consecutive sentences were not disproportionate to the seriousness of appellant's conduct and the danger posed to the public.
At the outset, we note R.C. 2953.08 governs an appeal of sentence for felony. Subsection (G)(2) states as follows:
 The court hearing an appeal of a sentence under division (A) or (B) or (C) of this section . . . may increase, reduce, or otherwise modify a sentence that is appealed under this section or may vacate the sentence and remand the matter to the trial court for resentencing. . . . The appellate court may take any action authorized by this division if it clearly and convincingly finds with of the following:
 (a) That the record does not support the sentencing court's findings . . .;
(b) That the sentence is otherwise contrary to law.
Clear and convincing evidence is that evidence "which will produce in the mind of the trier of facts a firm belief or conviction as to the facts sought to be established." Cross v. Ledford (1954),161 Ohio St. 469, paragraph three of the syllabus.
In order to impose consecutive sentences when an offender is convicted of multiple offenses, a trial court must first find that consecutive service is necessary to protect the public from future crime or to punish the offender. R.C. 2929.14(E)(4). The court must also find that consecutive sentences are not disproportionate to the seriousness of the offender's conduct and to the danger the offender poses to the public.Id. Finally, the trial court must find one or more of the following:
 a) The offender committed the multiple offenses while the offender was awaiting trial or sentencing, was under a sanction imposed pursuant to section 2929.16, 2929.17 or 2929.18 of the Revised Code, or was under post-release control for a prior offense.
 b) The harm caused by the multiple offenses was so great or unusual that no single prison term for any of the offenses committed as part of a single course of conduct adequately reflects the seriousness of the offender's conduct.
 c) The offender's history of criminal conduct demonstrates that consecutive sentences are necessary to protect the public from future crime by the offender."
Id.
Lastly, if a trial court imposes consecutive sentences, the trial court must give its reasons for imposing the given sentence. R.C.2929.19(B)(2)(c).
The January 31, 2001, sentencing entry in the case sub judice sets forth the statutory language covering all the necessary requirements for consecutive sentencing. Such entry states as follows:
 Pursuant to 2929.14(E), the Court finds for the reason stated on the record that consecutive sentences are necessary to protect the public from future crime or to punish the defendant and not disproportionate to the seriousness of the defendant's conduct and the danger the defendant poses to the public and consecutive sentences are required by law pursuant to division (E)(1) or (E)(2) or (sic) Revised Code Section 2929.14.
 The defendant's history of criminal conduct demonstrates that consecutive sentences are necessary to protect the public from future crime by the defendant.
Moreover, at the sentencing hearing, the trial court stated as follows on the record in sentencing appellant:
 THE COURT: All right. The Court has considered the record, the oral statements, the victim impact statement, as well as principles and purposes of sentencing under Revised Code 2929.11 and has balanced the seriousness and recidivism factors under Revised Code 2929.12.
 With respect to the seriousness factors, the Court finds in this case that the victim did suffer physical harm in that during the trial of this case there was an indication and there was evidence presented that the Defendant was struck on his head and that he had a fairly significant welt on his head from being struck presumably with a gun in this particular case, or some portion of a gun.
 Nonetheless, setting aside what the object might have been with which the victim was struck, he did have a significant injury on his forehead and his nose, his face area.
 With respect to the recidivism factors, Court finds that recidivism is more likely in that the Defendant does have a history of criminal convictions as the Prosecuting Attorney has set forth.
 The Court finds pursuant to Revised Code 2929.14(B) that the shortest prison term possible would demean the seriousness of the offense and would not adequately protect the public. Therefore the Court will impose a greater term.
 Specifically with respect to the one count of aggravated robbery with a firearm specification, the Court is going to impose a 9 year prison sentence with respect to the aggravated robbery charge, plus an additional 3 year prison sentence with respect to the firearm specification. Those two sentences to be served consecutively with each other.
 With respect to the one count of having weapons while under disability for which the jury also found the Defendant guilty, Court is going to impose an 11 month prison sentence, also finding that the shortest term possible will demean the seriousness of the offense and not adequately protect the public.
 That 11 month sentence will also be served consecutive to the 9 year and 3 year sentences which have been imposed for the aggravated robbery with the firearm specification.
 The Court finds after having heard the facts of this case that this was very plainly and simply an unprovoked attack against someone that the Defendant didn't even know, a patron who happened to be purchasing some items at a gas station, and then apparently the Defendants decided that they wanted his car, and so at gunpoint and after striking the Defendant took the Defendant's keys and fled.
 This is clearly not appropriate behavior in our society and clearly should not and can not be tolerated.
 Therefore because of the nature of the incident specifically and due to the fact that this is not the first time that the Defendant has been involved in the criminal justice system, the Court is imposing the sentences as stated previously.
Trial Transcript at 731-734.
Upon review of the trial court's findings from the sentencing hearing and the sentencing entry, we find that the trial court has made the necessary findings required by R.C. 2929.14(E)(4) to support the consecutive sentences imposed and that the trial court stated its reasons sufficiently. Furthermore, we find that, contrary to appellant's argument, the record supports the trial court's findings. Evidence was presented at the sentencing hearing that appellant has a 1991 conviction for burglary, an aggravated felony of the second degree, and a 2000 misdemeanor DUI conviction. In addition, testimony was adduced at trial that, as the trial court noted on the record at the sentencing hearing, "this was very plainly and simply an unprovoked attack" at gunpoint. Transcript at 733-734. In short, we find that appellant has failed to clearly and convincingly demonstrate that the record does not support appellant's sentence.
Appellant's fourth assignment of error is, therefore, overruled.
 V
Appellant, in his fifth assignment of error, asserts that he was denied the effective assistance of trial counsel. Appellant specifically argues that his trial counsel was ineffective in: (1) failing to move for a separate trial from Cedric Neeley, his co-defendant; (2) entering into a stipulation with the Prosecutor concerning appellant's 1991 conviction for an offense of violence; (3) failing to request a continuance of the trial to obtain fingerprint analysis; and (4) failing to object to leading questions posed by the Prosecutor to the victim on the issue of identification of his assailants.
A claim of ineffective assistance of counsel requires a two-prong analysis. The first inquiry in whether counsel's performance fell below an objective standard of reasonable representation involving a substantial violation of any of defense counsel's essential duties to appellant. The second prong is whether the appellant was prejudiced by counsel's ineffectiveness. Lockhart v. Fretwell (1993), 506 U.S. 364;Strickland v. Washington (1984), 466 U.S. 668; State v. Bradley (1989),42 Ohio St.3d 136. In determining whether counsel's representation fell below an objective standard of reasonableness, judicial scrutiny of counsel's performance must be highly deferential. Bradley,42 Ohio St.3d at 142. Because of the difficulties inherent in determining whether effective assistance of counsel was rendered in any given case, a strong presumption exists that counsel's conduct fell within the wide range of reasonable, professional assistance. Id. In order to warrant a reversal, the appellant must additionally show he was prejudiced by counsel's ineffectiveness. This requires a showing that there is a reasonable probability that but for counsel's unprofessional errors, the result of the proceeding would have been different. Bradley, supra at syllabus paragraph three. A reasonable probability is a probability sufficient to undermine confidence in the outcome. Id. at 143. It is with this framework in mind that we address the instances of alleged ineffectiveness of counsel raised by appellant in the instant case.
As is stated above, appellant initially argues that he received ineffective assistance of trial counsel since his trial counsel failed to move for separate trials of the co-defendants "given the obvious importance that race and identification played in appellant's conviction".
The joinder of defendants and the avoidance of multiple trials is favored in the law because joinder "conserves judicial and prosecutorial time, lessens the not inconsiderable expenses of multiple trials, diminishes inconvenience to witnesses, and minimizes the possibility of incongruous results in successive trials before different juries." Statev. Thomas (1980), 61 Ohio St.2d 223, 225. R.C. 2945.13 states:
 When two or more persons are jointly indicted for a felony, except a capital offense, they shall be tried jointly unless the court, for good cause shown on application therefor by the prosecuting attorney or one or more of said defendants, orders one or more of said defendants to be tried separately.
Whether an accused shall be tried separately from a co-defendant is a matter within the sound discretion of the trial court. State v. Abbott
(1949), 152 Ohio St. 228. Joinder is the rule rather than the exception. The burden is upon the defendant to show good cause why a separate trial should be granted and that the trial court abused its discretion in refusing to do so. A trial court is to grant a severance of defendants "[i]f it appears that a defendant or the state is prejudiced by a joinder of offenses or of defendants in an indictment, information, or complaint, or by such joinder for trial together of indictments, informations or complaints. . . ." Crim.R. 14. However, "[m]utually antagonistic defenses are not prejudicial per se." Richardson v. Marsh
(1987), 481 U.S. 200. A defendant claiming error in the trial court's refusal to sever offenses or defendants has the burden to affirmatively showing that his rights were prejudiced by the joinder. State v. Torres
(1981), 66 Ohio St.2d 340.
We have no need to analyze trial counsel's conduct because we find that appellant was not prejudiced by the same. See Bradley, supra. In the case sub judice, the evidence against each defendant was direct and uncomplicated so that the jury was capable of segregating proof as to each defendant. See State v. Parker (1991), 72 Ohio App.3d 456, 460
(citing State v. Brooks (1989), 44 Ohio St.3d 185). At the trial in this matter, Dentler was able to specify what the two perpetrators were wearing and also positively identified both appellant and his co-defendant at trial. In addition, Officer Gabbard identified appellant at trial as the driver of the Honda. Finally, as noted by appellee, appellant does not indicate what defenses he could have raised if separate trials were held. In short, we find that appellant was not prejudiced by his trial counsel's failure to request separate trials.
Appellant next argues that his trial counsel was ineffective in stipulating to appellant's 1991 conviction for burglary, an offense of violence. According to appellant, "a legal argument should have been advanced that [the] same was stale and inadmissible as convictions over ten years old are generally rarely admitted into evidence". However, we do not agree that such conviction cannot be the basis of a weapons under disability charge. R.C. 2923.13, which is captioned "Having Weapons While Under Disability," imposes no time limitations on the use of a conviction to create a disability. See State v. Covington (Jan. 10, 1996), Summit App. No. 17205, unreported.
Appellant further maintains that his trial counsel was deficient in failing to request a continuance of the trial date so that the Canton-Stark County Crime Lab could examine fingerprints lifted from the stolen Honda. Appellant specifically argues that the fingerprints "could have constituted exculpatory evidence". However, since the results of the fingerprint analysis are unknown, we cannot say that appellant was prejudiced by his trial counsel's failure to request a continuance at the trial to obtain the same.
Finally, appellant submits that his trial counsel was ineffective in failing to object to leading questions posed by the Prosecutor to Dentler, the victim herein, on the issue of identification of his assailants. In support of his argument, appellant specifically points to the following testimony adduced at trial:
Q. Did they each have weapons?
A. Yes, they did.
Q. Did they each have a laser site on the weapon?
A. I don't believe so. I don't believe.
Q. Okay. The one that had a laser site on it —
A. Uh-huh.
Q. — is that the one that was put in your face?
A. Yes, that's the one that was put in my face.
 Q. Okay. Do you remember which of the two men that had that pistol with the laser site, do you remember if it was the taller one?
 A. Yeah. They came up to me and they asked me for drugs, if I had any drugs. Then they asked me if I had any money, and then eventually it just came down to stealing my car.
Trial Transcript at 168. Assuming, arguendo, that the Prosecutor's above questions to Dentler were leading, upon our review of the record, we cannot say that there is a reasonable probability that the outcome of appellant's trial would have been different if the questioning had not occurred.
In short, we find that appellant has failed to meet the test outlined in Bradley, supra. for establishing ineffective assistance of trial counsel. Since there is not a reasonable probability that, but for the above alleged failures and omissions of appellant's trial counsel, the result of appellant's trial would have been different, appellant has suffered no prejudice from the same.
Appellant's fifth assignment of error is, therefore, overruled.
Accordingly, the judgment of the Stark County Court of Common Pleas is affirmed.
By EDWARDS, J., HOFFMAN, P.J. and GWIN, J. concur.
 JUDGMENT ENTRY
For the reasons stated in the Memorandum-Opinion on file, the judgment of the Stark County Court of Common Pleas is affirmed. Costs to appellant.
[1] The firearm specification was pursuant to R.C. 2941.145.
[2] In 1991, appellant was convicted for burglary in Summit County Case No. CR 90 12 2370, an aggravated felony of the first degree.